[Crim. No. 8251. In Bank. Jan. 26, 1966.]

In re FORREST S. TUCKER on Habeas Corpus.

Forrest S. Tucker, in pro. per., and Robert C. Anderson, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Edsel W. Haws, Deputy Attorney General, for Respondent.

PEEK, J.—By his application for the writ of habeas corpus Forrest S. Tucker, an inmate of Folsom Prison, seeks relief from the determination that he is an habitual criminal within the terms of subdivision (a) of section 644 of the Penal Code. He also challenges the quality of the representation afforded him by court-appointed counsel on appeal and urges that we recall the remittitur and reinstate his appeal.

The certified abstract of judgment reveals that on November 27, 1953, a judgment of multiple convictions pursuant to jury verdicts was entered against petitioner for four counts of first-degree robbery; that two charged prior felony convictions were found to be true; and that petitioner was thereupon adjudged to be an habitual criminal within the meaning of subdivision (a) of section 644 of the Penal Code.[1]

The priors charged and proved were (1) grand larceny in Florida in 1938, and (2) burglary in Louisiana in 1946. For each of these convictions a term was served in state prison.

As in the case of *In re Woods, ante,* p. 3, [48 Cal.Rptr. 689, 409 P.2d 913], decided this day, petitioner collaterally attacks each of the two prior convictions on the ground that he neither was advised of this right to, nor was provided with, nor expressly waived, the services of counsel prior to his entry of a plea of guilty in each case. He accordingly contends that *Gideon* v. *Wainwright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733], and *United States* ex rel. *Durocher* v. *LaVallee,* 330 F.2d 303, render each prior conviction invalid so that the use of either or both to impose habitual criminal status upon him was improper.

The *Woods* decision explains the propriety of our present examination of constitutionally challenged out-of-state priors

---

[1] As here relevant, the indicated subdivision provides in substance that one convicted of robbery who has been twice previously convicted of certain enumerated crimes, burglary and grand theft among them, and who has served separate prison terms for such convictions in this state or elsewhere, shall be adjudged an habitual criminal and shall be punished by imprisonment for life.

as they relate to California adjudications of habitual criminality. That decision further details the necessity of present inquiry in spite of the difficulties imposed by the passage of time. We thus turn directly to the authorities and records relevant to each prior conviction.

The record of the 1938 Florida conviction consists of certified copies of the information and judgment. Attached to the information is a notation by the deputy clerk that petitioner was "arraigned in open Court, and to the within Information pleaded Guilty." The judgment relates that petitioner pleaded guilty to the offense charged and then proceeds to impose sentence. The record is entirely silent as to whether petitioner was represented by counsel, whether he was offered appointed counsel to advise him, or whether he waived the services of counsel.

Section 8375 of the Compiled General Laws of Florida (1927), effective at the date of petitioner's 1938 grand larceny conviction, provided in relevant part that "the judge shall appoint counsel in all *capital* cases where the defendant is insolvent as he shall deem necessary." (Italics added.) Florida cases interpreting this section and its present counterpart, section 909.21, Florida Statutes Annotated, have emphasized that when the charge is for less than a capital offense, Florida law imposes upon the trial court no duty to supply counsel to the defendant. (*Johnson* v. *Mayo,* 158 Fla. 264 [28 So.2d 585]; *Watson* v. *State,* 142 Fla. 218 [194 So. 640].) Further, since the conviction at issue occurred prior to the 1942 decision of the United States Supreme Court in *Betts* v. *Brady,* 316 U.S. 455 [62 S.Ct. 1252, 86 L.Ed. 1595], the trial court cannot be presumed to have felt a constitutional duty to assign counsel in noncapital cases even in those instances where failure to do so would have resulted in an unfair trial.

Since it appears that Florida law imposed no duty to advise of the right to counsel, and appoint counsel for indigents charged with noncapital offenses, the presumption of performance of official duty (see *In re Woods, supra, ante,* pp. 3, 7) cannot here be invoked in aid of a finding that proper advice was given prior to the entry of a plea. Further, the judge who presided at the proceedings is now deceased, so that his declaration is not available to aid our inquiry in this regard. (Compare *In re Luce, ante,* p. 11 [48 Cal.Rptr. 694, 409 P.2d 918].)

However, respondent has here produced the affidavit of J. F. McCracken, clerk of the rendering court, which states

in relevant part that affiant was deputy clerk of the court at the time of petitioner's conviction; that for many years he attended proceedings of the court in his capacities as clerk and deputy clerk; "that he knew the said Judge Ben C. Willard officially and intimately during his entire service in said court; that it was the settled practice and custom of Judge Willard in cases brought before him where the defendant was unable to employ counsel to explain to him his right to counsel and to offer to such defendant to appoint a member of the Bar practicing before the court to represent him in his trial, and that it was the custom and settled practice of Judge Willard not to accept a plea of guilty from such defendants until he was assured that they and each of them understood the significance of such plea and understood that he would provide counsel for them if they wished to have the services of an attorney"; that "the records of the court do not have entries showing affirmatively that Tucker had his right to counsel explained to him or that he had after such explanation waived counsel, but Affiant says that it was not customary at that time to make such entries in the files and on the Minutes of the court because it was the settled practice of the Judge to explain to each defendant who came before him on a felony charge and who indicated that he was unable to employ counsel to explain to him that he had a right to counsel and that the court would appoint one for him if he desired the services of an attorney"; that "Affiant does not have any independent recollection of these cases involving Forrest Tucker. . . ."

The clerk's affidavit concerning the custom and practice of Judge Willard is persuasive evidence that petitioner was advised of his right to the services of court-appointed counsel prior to the entry of his guilty plea in the 1938 Florida proceeding (see *In re Luce, supra, ante,* p. 11; *In re Johnson* 62 Cal.2d 325, 331 [42 Cal.Rptr. 228, 398 P.2d 420]), and we conclude that it is sufficient to refute petitioner's bare allegation that he was not so advised.

As to the question of waiver of the right to counsel in the Florida proceedings, here, as in the cases of *In re Woods, supra, ante,* p. 3, and *In re Luce, supra, ante,* p. 11, petitioner's allegation of nonwaiver is effectively controverted by respondent's return to our order to show cause.[2] Since we

---

[2]The return does not specifically traverse petitioner's allegation of nonwaiver but does traverse his allegation of "lack of counsel." The context indicates that petitioner in referring to "lack of counsel" contemplates both inquiries here involved, i.e., advice and waiver. Respondent's traverse of that allegation will here be considered a denial of allegation of nonadvice and nonwaiver.

have here concluded that petitioner was advised of his right to legal assistance prior to his entry of a guilty plea, the fact issue of waiver raised by that plea remains to be determined. (*In re Woods, supra, ante,* p. 3.) As in *Woods,* the case must be returned for hearing to the court wherein the judgment establishing petitioner's habitual criminal status was rendered.

The record of the 1946 Louisiana proceeding contains an excerpt from the minutes which reveals that on November 22, 1946, petitioner ''in person, unattended by Counsel, was placed before the bar of the Court this day for arraignment. When after hearing the Information read by the Clerk, the Defendant thereupon entered a plea of 'Guilty as Charged.' '' The record makes no reference to the matter of appointment of counsel or waiver.

Section 15:143 of the Louisiana Statutes, effective in 1946, provides as follows: ''Whenever an accused charged with a felony *shall make affidavit that he is unable to procure or employ counsel* learned in the law, the court before whom he shall be tried, or some judge thereof, shall immediately assign to him such counsel. . . .'' (Italics added.) In 1937 the Supreme Court of Louisiana interpreted section 15:143 as requiring (1) that ''When an accused person is brought before the court under a felony charge and appears unrepresented by counsel, it is the duty of the court to ascertain why he has none and if he wants representation''; (2) that representation must be provided to those unable to provide it for themselves, in the absence of waiver; and (3) that ''the minutes of the trial court should show whether the accused had counsel, and, if not, the reasons why.'' (*State* v. *Youchunas,* 187 La. 281, 284 [174 So. 356].)

However, in 1950 the same court disapproved the *Youchunas* holding, at least insofar as it required *the court* to initiate proceedings leading to the appointment or explicit waiver of counsel: ''It has been the universal practice and procedure in the trial of all criminal cases in this State to furnish the accused, *upon his request* in proper cases, with counsel to assist him in the trial and defense of his cause, and the trial judge's refusal to do so constitutes a reversible error . . . *but the court need not appoint counsel for the accused unless he requests it* . . . and where the defendant, charged with a felony, pleads guilty . . . without the assistance of counsel, he has no valid cause for complaint. . . . We therefore conclude that the defendant, having been convicted and sentenced on his own plea, *without suggesting to the trial judge that he needed or*

*wanted the assistance of counsel in making said plea,* was not deprived of his liberty without due process because of the failure of the minutes to show that no counsel was appointed to represent him." (Italics added.) (*State* v. *Hilaire,* 216 La. 972 [45 So.2d 360].) The Louisiana court did not advert to the 1945 United States Supreme Court decision in *Rice* v. *Olson,* 324 U.S. 786 [65 S.Ct. 989, 89 L.Ed. 1367], wherein it was held, or at least strongly implied, that the Fourteenth Amendment forbade a finding that one who pleaded guilty to a felony charge without advice or knowledge of his right to counsel thereby waived that right, and that a defendant's failure to request counsel prior to the entry of the plea did not affect the determination.

It thus appears that Louisiana law at the time relevant herein (1946) was not well defined as to whether advice of the right to counsel was required prior to the acceptance of a plea. Though the *Hilaire* case had not yet been decided in 1946, and *Youchunas* might therefore be said to represent the controlling law at that time, the fact that the minutes herein do not reflect the matters demanded by *Youchunas,* together with the fact that *Hilaire* cited several cases decided prior to the date of petitioner's conviction for the proposition that counsel need not be provided absent a defendant's request therefor, all lead to the conclusion that the courts of Louisiana did not feel bound by the *Youchunas* decision prior to its disapproval.

The only evidence before this court as to the matter of advice is petitioner's declaration, relating the circumstances of his plea and alleging that he was not advised of his right to counsel prior to its entry, and an unsworn letter from the now assistant district attorney of Orleans Parish, Louisiana, stating that ''Under our procedure, at that time, defendant was advised at the time of arraignment of his right to counsel and appointment to counsel.'' The letter wholly fails to provide any foundation for this assertion in that it neither states a competent extrinsic source of information nor sets forth facts establishing that the author's asserted knowledge is based upon personal observation.

For these reasons, a hearing must be had in order to determine whether petitioner herein was in fact advised of his right to counsel prior to the entry of his guilty plea to the 1946 Louisiana burglary charge. Further, if it is found that petitioner was so advised, then his guilty plea subsequent to such advice, in the context of present conflicting allegations as to

waiver, raises a fact issue also to be determined. (*In re Woods, supra, ante,* p. 3.)

The trial court, in its redetermination of petitioner's status as an habitual criminal, will therefore be concerned with the following questions: Relative to the 1937 Florida conviction, did petitioner, by his entry of a plea of guilty after being advised of his right to counsel, thereby intelligently and understandingly waive that right? Relative to the 1946 Louisiana conviction, (1) was petitioner advised of his right to legal assistance prior to his entry of a plea? and (2) if so, did he by his entry of a plea of guilty after being so advised thereby intelligently and understandingly waive his right to the assistance of counsel?

 Petitioner additionally urges that we should recall the remittitur and reinstate his appeal from the basic robbery conviction because he was not there afforded "representation in the role of an advocate" as required by the federal Constitution. (*Douglas* v. *California,* 372 U.S. 353, 357 [83 S.Ct. 814, 9 L.Ed.2d 811].) This contention is based on the allegation that counsel appointed to represent petitioner on appeal there failed to brief and argue several matters which petitioner urged him to present. It appears that counsel presented only one contention, that the several sentences imposed for the four robbery counts should have run concurrently with each other and with any other federal or state sentences. It further appears that the District Court of Appeal agreed with this argument and modified the sentences accordingly. (*People* v. *Tucker,* 127 Cal.App.2d 436 [273 P.2d 934].)

We need not here decide whether the failure of appointed appellate counsel to present an issue of real or prima facie merit can vitiate an appeal on constitutional grounds, for we have determined, after a full examination of the several contentions which petitioner would have had counsel raise, that none of them has merit. It is to be observed that counsel displayed some wisdom in concentrating his energies, and those of the appellate court, upon the single issue of any substance.

The writ is granted insofar as relief is sought from the prior determination of habitual criminality, and the Superior Court of Alameda County is directed to redetermine petitioner's status as an habitual criminal in further proceedings in accordance with the views expressed herein. In all other respects the writ is denied.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.