[Civ. No. 30304.   Second Dist., Div. Five.   Nov. 21, 1967.]

In re JIMMIE JONES, a Person Coming Under the Juvenile Court Law.

THE PEOPLE, Plaintiff and Respondent, v. JIMMIE JONES, Defendant and Appellant.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Richard S. Buckley, Public Defender, Carol C. Krauthamer, Robert Martin and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Andrea Sheridan Ordin, Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, J.—This is an appeal from a judgment of the juvenile court[1] finding the minor to come within the provisions of section 602 of the Welfare and Institutions Code and declaration of wardship.[2]

On August 19, 1965, a petition was filed in the juvenile court alleging that one Jimmie Jones, a minor, came within

---

[1] Welfare and Institutions Code section 550: ''Each superior court shall exercise the jurisdiction conferred by this chapter, and while sitting in the exercise of such jurisdiction, shall be known and referred to as the juvenile court.''

Throughout this opinion, references to code sections, unless otherwise noted, are to the Juvenile Court Law of California, and are contained in the Welfare and Institutions Code.

[2] Section 602: ''Any person under the age of 21 years who violates any law of this State or of the United States or any ordinance of any city or county of this State defining crime or who, after having been found by the juvenile court to be a person described by Section 601, fails to obey any lawful order of the juvenile court, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court.''

the provisions of section 602. The petition alleged that on August 17, 1965, Jimmie Jones wilfully and unlawfully attempted to set fire to, or caused to be burned, the building of a Thrifty Drug Store, thereby violating sections 664 and 447a of the Penal Code (attempted arson).[3] On September 8, 1965, Jimmie and his mother appeared for hearing on the petition before the juvenile court and at that time were represented by the public defender.[4]

After hearing testimony, the allegations of the petition were found to be true, and the petition was sustained. The court found that the welfare of Jimmie required his custody to be taken from his parents, and so ordered. Declaration of wardship was made. After consideration of the probation officer's report as received in evidence, Jimmie was ordered recommitted to the California Youth Authority.[5]

The facts are that on August 17, 1965, in the area of Vermont Avenue and Jefferson Boulevard, Los Angeles. Jimmie was observed by James C. Watts of the Los Angeles Police Department. The time was shortly before 7 p.m., the area was within that of the Watts Riot, and the date was within the dates of that disaster. Jimmie was seen standing next to a large trash bin which was adjacent to the rear of a Thrifty Drug Store. An unidentified minor was some 20 to 25 feet removed from the bin at the time Jimmie was first observed by Officer Watts. Both minors commenced to hurriedly walk away, into a crooked-type alley and around the corner. Officer Watts called for them to return, which they did.

The unidentified minor was carrying two or three boxes which he related he had taken from the trash bin. Officer Watts directed these to be left. Jimmie stated he was "just looking," when asked what he was doing. The officer told Jimmie to get out of the area and to stay out. All three left the vicinity of the bin, going in different directions. Very

[3]Section 503: "An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding."

[4]Section 634: "When it appears to the court that the minor or his parent or guardian desires counsel but is indigent and cannot for that reason employ counsel, the court may appoint counsel. In such a case the court must appoint counsel for the minor if he is charged with misconduct which would constitute a felony if committed by an adult. . . ."

[5]At the time of this recommitment, the minor was under parole from the California Youth Authority. While our determination in the instant case affects the recommitment order, it does not affect the minor's status as a parolee of that Authority.

shortly thereafter, a third minor (Dennis) reported to Officer Watts: "Officer, the boy you just talked to set fire to the trash can at the Thrifty Drug Store. They are on fire now."

Officer Watts and his partner, Officer Smith, ran back to the bins and found them to be afire. The bins were rolled away from the building, and the fire extinguished. The quick action by the police limited the damage to but slight scorching of the building.

Officer Watts commandeered an Army jeep and located Jimmie the "second street west of this [drugstore] location and one street to the right . . . running towards the scene where he had set the fire . . ." On motion by defense counsel, that portion of the last quoted testimony being the conclusion of Officer Watts ("where he [Jimmie] had set the fire . . .") was stricken by the court.

Jimmie was taken into custody, advised as to his constitutional guarantees, and searched. Two paper books of matches were found in his right front pocket, and about half the matches were in each. The only comments made by Jimmie to the officers expressed antagonism and did not relate to any fact relative to the charge.

It was established that at the time Officer Watts first spoke to and ordered the minors away from the bins, he observed no smoke or fire. He did not see Jimmie or anyone else light the fire. The origin of the ignition of the bin's contents was not determined.

The testimony of Officer Watts relating the statement to him by Dennis, "Officer, the boy you just talked to set fire to the trash can at the Thrifty Drug Store," was admitted solely as it might establish probable cause for the detention of Jimmie, and not to prove the truth of the facts therein contained.[6]

The question before us is whether or not the commission of the charge is established by a preponderance of evidence. As we have noted, the testimony as to the cause of the conflagration in the bin and the identity of the perpetrator was admitted solely to establish probable cause for detention.

[6]Section 701: "At the hearing, the court shall first consider only the question whether the minor is a person described by Sections 600, 601, or 602, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; however, a preponderance of evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602, . . ."

It may not be considered as part of that evidence to be weighed in the scale of preponderance.

█ Without belaboring our discussion with well known definitions of preponderance of evidence and too often restated appellate court limitations in reviewing conflicting evidence, we determine the crucial question: Is there substantial evidence to support the juvenile court's finding? The answer is in the negative.

On the evidence legally admissible, we find strong suspicion pointing to Jimmie as an arsonist. We have evidence to the effect that the trash bin was ignited and that its proximity to the building indicated a design of arson, that Jimmie had access to the bin, and possessed a means of igniting inflammables. We have nothing more. The minor with the boxes purportedly removed from the bin could be suspected. The informer, Dennis, could be suspected. Jimmie was suspected. How many others may have been near the bin and subject to suspicion, we cannot guess, nor can we with any certainty at all determine the source of the ignition.

Probable cause for arrest may well be synonymous with strong suspicion (*People* v. *Torres,* 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823] ; *People* v. *Cedeno,* 218 Cal.App. 2d 213, 219 [32 Cal.Rptr. 246] ; Witkin, Cal. Criminal Procedure, (1963), § 103, p. 102), but without more, it does not rise to the dignity of preponderance of the evidence.

The judgment is reversed.

Kaus, P. J., and Hufstedler, J., concurred.