[Crim. No. 13349.   Second Dist., Div. Five.   Jan. 13, 1969.]

In re J. F., a Person Coming Under the Juvenile Court Law.

THE PEOPLE, Plaintiff and Respondent, v. J.F., Defendant and Appellant.

Donald M. Wessling, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Andrea Sheridan Ordin, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—When a minor who is subject to the control of the Youth Authority nears his 21st birthday, the time he would normally be discharged (Welf. & Inst. Code, § 1769), the Youth Authority Board may apply to the committing court for an order directing that he remain subject to its control after he has reached the age of majority. (Welf. & Inst. Code, § 1800.) If the court finds "that discharge of the person would be physically dangerous to the public because of his mental or physical deficiency, disorder, or abnormality," it must make an order that the Youth Authority "continue the treatment." (Welf. & Inst. Code, § 1801.) Thereafter the

Youth Authority may seek renewal of the commitment every two years in case the original commitment was by the juvenile court, and every five years if it resulted from a conviction in criminal proceedings. (Welf. & Inst. Code, § 1802.) It may, of course, discharge the "person" at any time if "it is satisfied that such discharge is consistent with the protection of the public." (Welf. & Inst. Code, § 1766.)

This is an appeal from an order of commitment made under the provisions of section 1802.[1]

Because of the nature of the contentions made by appellant, we must summarize his various contacts with the processes of the Juvenile Court Law.

On May 19, 1960, an order was made making F. a ward of the juvenile court. He was committed to the care of the probation officer to be returned to his home on probation. On September 29, 1960, after the filing of two additional petitions, physical custody was taken from the parents and F. was ordered placed in a forestry camp. On December 27, 1960, after a hearing at which F. was not represented by counsel, he was committed to the Youth Authority. It appeared at that time that he had been unable to adjust to the probation program. This was what we shall refer to as the "first commitment." Sometime thereafter F. was paroled (Welf. & Inst. Code, § 1766), but while on parole he again got into trouble. On February 19, 1963, there was held a so-called "detention hearing." (Welf. & Inst. Code, § 632.) The court explained to F. who was then 17 years old, that the purpose of the hearing was to acquaint him with the charges contained in a petition that had been filed by the probation officer, to inform him and his parents of their legal rights and to determine where he would spend his time between then and the date for the hearing on the petition. The court continued: "Under the law, James, you and your parents have the right to be represented by counsel at all stages of these proceedings, and to have court process issue in your behalf, such as subpoenas for witnesses. In addition, you have the right to remain silent, but if you care to you may answer questions which the Court is going to ask you this morning. . . ." F. said he understood, as did his father, who was present.

F. was detained pending the hearing, which took place before a referee on March 7, 1963. The referee recommended

---

[1]Unless otherwise noted all code references are to the Welfare and Institutions Code. For the sake of brevity, we shall from time to time refer to sections 1800 to 1803 of that code collectively as "section 1800."

that F. be readjudged a ward of the court and that he be returned to the Youth Authority for further disposition. The order was approved by the court on March 11. This was what we shall call the ''second commitment.'' The record shows that at the hearing of March 7, F. was not represented by counsel. The parties have, however, been unable to obtain a reporter's transcript which would show whether or not he effectively waived the right to counsel.

On October 18, 1966, the Youth Authority Board petitioned the superior court that F. be returned to it for disposition under section 1800 et seq.[2] After an extensive hearing, at which F. was represented by private counsel, the court made a finding that it was ''of the opinion that the discharge of [F.] would be physically dangerous to the public because of his mental deficiency, disorder and abnormality . . .'' The petition was granted and this appeal followed.

The sufficiency of the evidence is not attacked. We are, however, faced with the following contentions:

1. The present appeal is a proper vehicle for a challenge of the constitutional validity of the first and second commitments, since the validity of the section 1800 proceedings depends on the legality of these prior commitments.

2. The two prior commitments were constitutionally invalid because on neither occasion was F. represented by counsel, nor does the record disclose a constitutionally adequate waiver. Implicit in this point is a major premise that the right to counsel in juvenile proceedings, recognized in *In re Gault* 387 U.S. 1, 34-42 [18 L.Ed.2d 527, 550-554, 87 S.Ct. 1428], must be retroactively applied.

3. Regardless of the validity of the first and second commitments, the order under review must be reversed because:

(a) F. was denied due process in that he was deprived of his liberty without his ''guilt'' having been established beyond a reasonable doubt;

(b) it is a denial of the equal protection of the laws to single out minors who have been committed to the Youth Authority as persons whose ''guilt'' need not be established beyond a reasonable doubt;

(c) the code sections under which F. was committed are unconstitutionally vague; and

(d) F. was denied due process in that the trial court failed to make findings ''or render an opinion from which any meaningful appeal can be taken.''

[2]F. was to reach his 21st birthday on February 1, 1967.

■ We first deal with the attack on the prior commitments. We agree that the section 1800 proceedings derive their legitimacy from the validity of the prior commitment. (*In re Bevill*, 68 Cal.2d 854, 858-861 [69 Cal.Rptr. 599, 442 P.2d 679].) ■ We also assume, for the sake of argument, that the right to counsel, as vouchsafed by *Gault*, is fully retroactive. (*Pickelsimer* v. *Wainwright*, 375 U.S. 2 [11 L.Ed.2d 41, 84 S.Ct. 80]; *In re Woods*, 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913].)[3] This does not settle the question whether appellant may challenge the validity of the prior commitments on this appeal.

We have noted that at the section 1800 hearing F. was represented by counsel. At no time did counsel make an issue of the constitutional validity of the prior commitments.

*In re Woods*, 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913],[4] established that in this state habeas corpus is a proper vehicle with which to challenge the constitutional validity of prior felony convictions, long since final, where there is a claim that the petitioner had not been "advised of his right to, nor was provided with, nor expressly waived, the services of counsel . . ." (64 Cal.2d at p. 5.) *Woods* also recognized that it was constitutionally impermissible to presume waiver from a silent record. (64 Cal.2d at p. 7.)

For a short time after the *Woods* decision, it became arguable that even on a direct appeal, where no issue concerning the validity of a prior conviction had been made at the trial level, findings that such a prior conviction was true could be stricken on appeal. This was the clear implication, if not the holding, of *People* v. *Ebner*, 64 Cal.2d 297 [49 Cal.Rptr. 690, 411 P.2d 578]. There the defendant admitted three prior convictions and was found to be a habitual criminal under section

---

[3]The jurisdictions are split on the point. Holdings or dicta to the effect that the right to counsel in juvenile court proceedings is retroactive are: *Marsden* v. *Commonwealth*, 352 Mass. 564 [227 N.E.2d 1]; *Application of Billie*, 103 Ariz. 16 [436 P.2d 130]; *State ex rel. La Follette* v. *Circuit Court of Brown County, BE. 1*, 37 Wis.2d 329 [155 N.W. 2d 141]; and *Steinhauer* v. *State* (Fla.App.) 206 So.2d 25. Dicta for an opposite view include *Cradle* v. *Peyton*, 208 Va. 243 [156 S.E.2d 874]; and *State* v. *Hance*, 2 Md.App. 162 [233 A.2d 326]. Both *Cradle* and *Hance* involved certification procedures similar to those involved in *Kent* v. *United States*, 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045]. Our own Supreme Court has held that *Kent* "does not apply to cases in which the judgment became final prior to May 15, 1967, the date of the decision in *Gault*." (*In re Harris*, 67 Cal.2d 876, 879 [64 Cal.Rptr. 319, 434 P.2d 615].)

[4]See also *In re Luce*, 64 Cal.2d 11 [48 Cal.Rptr. 694, 409 P.2d 918]; *In re Tucker*, 64 Cal.2d 15 [48 Cal.Rptr. 697, 409 P.2d 921].

644, subdivision (a) of the Penal Code. He appealed. After affirming Ebner's conviction in the case on appeal, the court held: "Defendant finally contends that the trial court in determining whether defendant was an habitual criminal could not properly consider his Arizona conviction because in the proceedings leading to that conviction defendant was deprived of his constitutional right to counsel. (*Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].)

"We have held that a prior felony conviction cannot support an adjudication of habitual criminality under Penal Code section 644 unless at the prior proceeding the defendant was represented by counsel or intelligently and understandingly waived that right. (*In re Tucker* (1966) *ante,* p. 15 [48 Cal.Rptr. 697, 409 P.2d 921]; *In re Luce* (1966) *ante,* p. 11 [48 Cal.Rptr. 694, 409 P.2d 918]; *In re Woods* (1966) *ante,* p. 3 [48 Cal.Rptr. 689, 409 P.2d 913].) We cannot determine on the basis of the record before us whether defendant's Arizona conviction of burglary can support an adjudication of habitual criminality. Following the procedure outlined in *Tucker, Luce,* and *Woods,* we must return this cause to the trial court for hearing and findings on the factual issue whether defendant suffered a deprivation of his constitutional right to counsel in the Arizona proceedings." (64 Cal.2d at pp. 304-305.)

Although *Ebner* apparently stood for the proposition that on an appeal it is the burden of the People to prove the constitutional validity of a prior conviction, this did not remain the law. In *People* v. *Merriam,* 66 Cal.2d 390 [58 Cal.Rptr. 1, 426 P.2d 161], where the matter was thoroughly discussed, it was held that the validity of prior convictions was not reviewable where they are "sought to be challenged for the first time on direct appeal from the judgment wherein such prior was found to be true . . ."[5] (66 Cal.2d at p. 396.) The reason for the *Merriam* rule is obvious: if the validity of a prior conviction is challenged in the trial court, the People have an opportunity to make the silent record speak.[6] The same is true where the assault takes the form of a habeas

---

[5]*Merriam* does not mention *Ebner.* It does, however, expressly disapprove *People* v. *Shanklin,* 243 Cal.App.2d 94 [52 Cal.Rptr. 28], which had relied on *Ebner.* See also *People* v. *Womack,* 252 Cal.App.2d 761, 766, fn. 3 [60 Cal.Rptr. 870] and *People* v. *Dadney,* 250 Cal.App.2d 933, 946 [59 Cal.Rptr. 243].

[6]In *People* v. *Coffey,* 67 Cal.2d 204, 217-218 [60 Cal.Rptr. 457, 430 P.2d 15], the Supreme Court established certain procedural ground rules governing such a trial court challenge.

corpus petition. Again the People have notice of the claim and are given a chance to overcome the presumptions that favor the defendant. The People's right to attempt to do so can only be satisfied by a candid challenge at the trial level. Obviously an appellate ambush will not do.[7]

Application of the *Merriam* rule to this case seems particularly appropriate. At the time of the second commitment our Legislature had anticipated *Gault,* at least in part. The Juvenile Court Law, as extensively revised by the 1961 Legislature provided for the right of representation both at the detention hearing (Welf. & Inst. Code, §§ 633, 634), and at the adjudicatory hearing which could result in a commitment to the Youth Authority (Welf. & Inst. Code, § 700). The cited code sections also provide for advice of the right to counsel on each occasion and for appointment of counsel for indigent minors. As we know from the fragmentary record before us the statutory mandate was observed before the detention hearing.[8] The chances that the People, if challenged to do so, would have been able to prove an effective waiver seem quite good.

The first commitment antedates the legislative changes of

---

[7]*Merriam* also disposes of any argument pointing to the fact that the section 1800 proceedings here took place a few months before *Gault*. In *Merriam*, the trial had preceded the *Woods* decision and it was argued that this fact entitled Merriam to raise the issue for the first time on appeal. The court disagreed. ''. . . In the event that defendant is presently able to make the allegations necessary to raise the issue in question, a remedy by way of collateral attack upon the judgment remains available to him.'' (66 Cal.2d at p. 398.) Just what collateral attacks on his prior commitments are open to appellant at this time, we are not prepared to say. We are informed by counsel that he is no longer subject to the control of the Youth Authority. While the parties agree that this fact does not make this appeal moot (*People* v. *Succop*, 67 Cal.2d 785, 790 [63 Cal.Rptr. 569, 433 P.2d 473]; *In re Byrnes*, 26 Cal.2d 824, 827-828 [161 P.2d 376]; cf. *Carafas* v. *LaVallee*, 391 U.S. 234, 237-240 [20 L.Ed.2d 554, 558-560, 88 S.Ct. 1556]), it has not been suggested to us what particular type of proceeding is still available to F., so that he may ''clear his name.'' (*People* v. *Succop, supra*, p. 790.) Perhaps there is none, but as we read *Merriam* it is not the availability of habeas corpus or other collateral attack which makes the rule of that case applicable although the trial proceedings took place before *Woods*, but the fact that ''the scope of direct appeal is limited by the trial record.'' (66 Cal.2d at p. 398.)

[8]Not, however, the constitutional requirement of *Gault*, if applicable. ''We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, *or if they are unable to afford counsel, that counsel will be appointed to represent the child.*'' (387 U.S. at p. 41 [18 L.Ed.2d at p. 553]. (Italics added.)

1961 and the possibility of a valid waiver is more remote, but, if valid, the second commitment alone provides a sufficient foundation for the section 1800 proceedings.

We therefore turn to the claimed defects in those proceedings. ▮ Before discussing the several arguments advanced on behalf of F., some general observations are in order: quite clearly a commitment, continued beyond the age of majority, is permitted by statute not because of what the minor has done in the past, but by reason of what ''because of his mental or physical deficiency, disorder, or abnormality'' he is likely to do in the future. (Welf. & Inst. Code, § 1801.) Past misconduct is, at most of evidentiary value. While the concept of preventive detention raises interesting problems, nowhere in this proceeding is it attacked as such.[9] ▮ Established principles prevent us from trying to deal with constitutional broadsides until they are fired.

Further, at the outset, we note that, constitutional assertions aside, the section 1800 hearing which F. received was scrupulously fair. No claim to the contrary is made.

Finally—still by way of preface—it is noted that there is no contention that *Gault*—or for that matter our state Constitution (art. I, § 7)—called for the right of trial by jury, either at the first two commitments, or at the section 1800 proceedings. Although this matter was first briefed before the decisions in *Duncan* v. *Louisiana*, 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444] ; *Bloom* v. *Illinois*, 391 U.S. 194 [20 L.Ed.2d 522, 88 S.Ct. 1477] ; and *Dyke* v. *Taylor Implement Mfg. Co.*, 391 U.S. 216 [20 L.Ed.2d 538, 88 S.Ct. 1472], appellant has had several later opportunities to inject a jury trial issue into this case. ▮ In any event, as far as federal due process is concerned the right to trial by jury in state trials only dates from May 20, 1968, the date of the *Duncan*, *Bloom* and *Dyke* decisions. (*DeStefano* v. *Woods*, 392 U.S. 631, 635 [20 L.Ed.2d 1308, 1312, 88 S.Ct. 2093].) Theoretically, however, there is still the possibility of arguments based on our state Constitution or the equal protection clause.[10]

[9]See *In re Bevill, supra,* footnote 5.

[10]*Nieves* v. *United States*, 280 F.Supp. 994, held that jury trial is a matter of constitutional right under the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 et seq. *Peyton* v. *Nord*, 78 N.M. 717 [437 P.2d 716] held that the Constitution of New Mexico guaranteed the right to jury trial in the juvenile court and, by way of dictum, said that the Sixth Amendment of the United States Constitution contains an identical command. On the other hand, *In re Estes* v. *Hopp*, 73 Wn.2d 263 [438 P.2d 205] and *Commonwealth* v. *Johnson*, 211 Pa.Super. 62 [234 A.2d 9] are directly contra. All these decisions are post-*Gault* but pre-*Duncan*.

We now turn to the issues raised. Whether or not it follows from the specific holdings of *Gault* that juveniles are entitled to the protection of the burden of proof applicable in criminal cases[11]—that is to say, proof beyond a reasonable doubt—is the subject of some debate. The Supreme Court of Illinois has so held (*In re Urbasek*, 38 Ill.2d 535 [232 N.E.2d 716])[12] as has the United States Court of Appeals of the Fourth Circuit (*United States* v. *Costanzo*, 395 F.2d 441, 444-445). Two decisions of the District of Columbia Court of Appeals, *In re Bigesby*, 202 A.2d 785 and *In re Wylie*, 231 A.2d 81, are to the contrary. Chronologically *Bigesby* preceded, *Wylie* followed *Gault*.[13]

We do not believe that our own Supreme Court would fol-

---

[11]It is noted that while section 701 of the Welfare and Institutions Code provides for a preponderance of evidence test during the adjudicatory phase of a hearing pursuant to section 602 (*In re Jones*, 256 Cal. App.2d 240 [63 Cal.Rptr. 758]), no statutory standard is prescribed for section 1800 proceedings. In *Jones* this division had no occasion to consider whether the statutory standard of section 701 violates the implications of *Gault*, since we held that there was no substantial evidence to support the adjudication.

[12]A student note in 72 Dickinson Law Review, 547, 552 suggests that *Urbasek* does not follow as automatically from *Gault* as the Illinois court thought: ''It may be argued, however, that the *Gault* decision does not imply that a reasonable doubt test is required in juvenile proceedings. *Gault* involved a lack of procedural devices which were common to both criminal and civil trials. The issue simply was: did Gault get a fair hearing? The Supreme Court found he did not. The distinction ''between criminal and civil is meaningless where the minimum requisite safeguards in either proceeding are absent. In *Gault*, such safeguards were lacking and consequently the hearing was unfair no matter what name it was given. The Supreme Court alluded to this when in *Gault* it reaffirmed its opinion in *Kent* v. *United States*. 'We do not mean . . . to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.' Similarly, the *Gault* court required notice which is '. . . adequate in a civil or criminal proceeding.' Therefore, it is not the name by which the proceeding is called but the lack of standards and safeguards that is important in both juvenile and criminal cases. It would seem to follow then, that as long as some standard is used by which the judge may determine the juvenile's guilt, the hearing is a fair one. That standard, though, should be an accepted one such as proof by a preponderance of the evidence, clear and convincing proof, or proof beyond a reasonable doubt. . . .''

[13]See also: Michael and Cunningham, *From* Gault *To* Urbasek: *For The Young The Best of Both Worlds*, 49 Chi.B.Rec. 162; Ketcham, *Guidelines From* Gault: *Revolutionary Requirements and Reappraisal*, 53 Va.L.Rev. 1700, 1713; Oakey, Gault, *Whither Goest Thou?*, 6 Ill. Cont. Legal Educ. Vol. 4, 139, 140; Gardner, Gault *and California*, 19 Hastings L.J. 527, 539; Browne and Fort, In re Gault—*Its Impact In Oregon*, 5 Willamette L.J. 1, 24; Comment, 47 Ore.L.Rev. 166, 179; Comment, 47 Neb.L.Rev. 558, 579; Comment, 43 Ind.L.J. 661, 674; Comment, 19 Case West. Reserve L.Rev. 394, 401; Note, 9 Wm. and Mary L.Rev. 492, 501-502. Gault *frequently refers to a note: Juvenile Delinquents, The*

low *Urbasek, supra,* in section 1800 proceedings. In *People* v. *Moore,* 69 Cal.2d 674, 685 [72 Cal.Rptr. 800, 446 P.2d 800], it held that in narcotics commitment proceedings proof of addiction, or imminent danger thereof, need only be made by a preponderance of the evidence. In so ruling the court approved a decision of this division, *People* v. *Valdez,* 260 Cal.App.2d 895 [67 Cal.Rptr. 583], which was to the same effect. There we had said: *"In re De La O,* 59 Cal.2d.128, 136-150 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705], several other Supreme Court decisions [citations omitted] and a number of Court of Appeal cases [citations omitted] have described narcotic commitment proceedings as 'civil,' 'non-punitive' and 'remedial.' A situation may well arise where such characterization may break down in the face of the reality of the addict's involuntary confinement. (Cf. *In re Gault,* 387. U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428].) We do not believe, however, that the distinction between confinement as a criminal and loss of liberty as an addict whom the state hopes to cure, is sufficiently artificial to prohibit a difference in the burden of proof. It must be remembered that in a narcotic commitment case the jury is in reality asked to confirm what is essentially a medical diagnosis. The People's burden of persuasion ought to be no greater than the degree of assurance with which reputable physicians express themselves. (*Bauman* v. *San Francisco,* 42 Cal.App.2d 144, 163-165 [108 P.2d 989].)" (260 Cal.App.2d at pp. 903-904.) The reality of involuntary confinement is no greater when the incarceration is by

*Police, State Courts, And Individualized Justice,* 79 Harv.L.Rev. 775. Curiously enough a statement in that note that Los Angeles judges prefer ''to require proof beyond a reasonable doubt'' (79 Harv.L.Rev. at 795, fn. 110), is based on an interview with two judges of the Los Angeles County Superior Court, one of whom is the judge whose order is under review here. However, we cannot assume that he applied a criminal burden of proof. At one point he said: ''I assume we would follow the rules of evidence as they relate to civil proceeding.'' While rules of evidence are one thing and burden of proof is another, we think that the quoted statement suggests rather strongly that the court only required proof by a preponderance of the evidence. This is, of course, not necessarily inconsistent with a belief that at an adjudicatory hearing under section 602 proof beyond a reasonable doubt should be required. We assume throughout this opinion that the section 1800 proceedings are governed by *Gault.* We think the assumption is legitimate, but it should be pointed out that it is not demanded by the precise language of *Gault,* where the court said: ''In reviewing this conclusion of Arizona's Supreme Court, we emphasize again that we are here concerned only with a proceeding to determine whether a minor is a 'delinquent' and which may result in commitment to a state institution. . . .'' (387 U.S. at p. 44 [18 L.Ed.2d at p. 555].) While the section 1800 proceedings certainly continued F's. commitment to a state institution, they were not, strictly speaking, proceedings designed to determine whether he was a delinquent.

the Youth Authority, rather than at the California Rehabilitation Center. The trial court applied the correct burden.

██ Caution demands, however, that we draw attention to the limited nature of this holding. Giving F. the benefit of any doubt, we have assumed—see footnote 12, *ante*—that section 1800 proceedings are governed by the express holdings of *Gault*. It does not necessarily follow, however, that even if *Gault*, by implication, demands proof beyond a reasonable doubt at an adjudicatory hearing pursuant to section 602 of the Welfare and Institutions Code, where the question is whether the minor has violated a specific law (*In re M.G.S.*, 267 Cal.App.2d 329 [72 Cal.Rptr. 808]); *Gault* requires the same burden of proof at section 1800 proceedings. Conversely, this decision does not represent a holding that at the hearing which may result in the original commitment to the Youth Authority, the higher burden of proof is not required.

██ F. complains that the application of the ''preponderance of the evidence'' standard deprives him of the equal protection of the laws.

In *In re Cavanaugh*, 234 Cal.App.2d 316, 322 [44 Cal.Rptr. 422], the claim was made that section 1800 proceedings violated the equal protection clause in that they singled out the minors to whom it applied from all other members of society who were physically dangerous. The court held that the classification was ''neither arbitrary nor unreasonable.'' F. seeks to distinguish *Cavanaugh* on the basis that he is attacking the burden of proof, rather than the statute as a whole. We think this is a distinction without a difference. In any event, just as the claim that minors committed to the Youth Authority are the only persons who can be confined because of dangerous propensities never was correct,[14] so it is not true that the commitment of such minors is the only type of commitment subject only to a ''preponderance of the evidence'' test. For example ''mentally ill persons'' as defined in section 5550 of the Welare and Institutions Code may be committed after a trial which ''shall be had as provided by law for the trial of civil causes.'' (Welf. & Inst. Code, § 5575.)[15]

---

[14]See for example the statutes permitting the confinement of mentally disordered sex offenders (Welf. & Inst. Code, § 5500 et seq.), mentally ill persons (Welf. & Inst. Code, § 5550 et seq.), and mentally abnormal sex offenders (Welf. & Inst. Code, § 5700 et seq.). It is noted that starting July 9, 1969, the statutory provisions with respect to the treatment of mentally ill persons of all types undergo a drastic change. (Stats. 1967, ch. 1667; Stats. 1968, ch. 989.)

[15]Section 5575 of the Welfare and Institutions Code was repealed by Statutes 1967, chapter 1667, section 36.5, operative July 1, 1969.

■ The claim that the statutory standards prescribed for commitment under section 1800 are unconstitutionally vague was considered and rejected in *In re Cavanaugh, supra.* We follow that decision.

■ Finally F. complains that the court failed to make findings from which a meaningful appeal can be taken. This claim is prompted by *Specht* v. *Patterson,* 386 U.S. 605 [18 L.Ed.2d 326, 87 S.Ct. 1209]. *Specht* involved a proceeding under the Colorado Sex Offenders Act. (Colo.Rev.Stat.Ann. §§ 39-19-1 to 10.) Without any hearing "in the normal sense, no right of confrontation and so on" (386 U.S. at p. 608 [18 L.Ed.2d at p. 329]) Specht was committed under that act. The record does not show what findings, if any, were made. In condemning the procedure the Supreme Court said: ". . . Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed. . . ." (386 U.S. at p. 610 [18 L.Ed.2d at p. 330].)

While we agree that section 1800 proceedings require adequate findings, nowhere is it pointed out why the findings made in this case are inadequate. Insofar as the court thought it applicable, it made a finding in the statutory language that "the discharge of [F.] would be physically dangerous to the public because of his mental deficiency, disorder and abnormality." The court's failure to find that F. was a danger because of "physical deficiency" demonstrates that this was no rubber stamp finding. There were, of course, several evidentiary conflicts at the section 1800 hearing. but nothing in *Specht* or in any other authority familiar to us requires findings on such conflicts. The findings were adequate.

The order is affirmed.

Stephens, J., and Aiso, J., concurred.