[Crim. No. 7775. Third Dist. July 31, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL CARL FISK, Defendant and Appellant.

**COUNSEL**

Michael L. Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Robert D. Marshall, Eddie T. Keller and Ramon M. de la Guardia, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FRIEDMAN, Acting P. J.**—Defendant appeals after a jury convicted him of voluntary manslaughter and of weapon possession by an ex-felon. (Pen. Code, § 12021.) The indictment charged him as follows: count I, murder; count II, weapon possession by ex-felon; count III, that he was armed with a deadly weapon at the time of the offense mentioned in count I (Pen. Code, §§ 3024, 12022); counts IV and V, two prior felony convictions. Defendant admitted the two prior felony convictions and the jury sustained the "armed with a deadly weapon" allegation. The judgment recited the two prior convictions and the deadly weapon finding.

Defendant had been living with Jackie Johnson while the latter's husband, Ronald, was in jail. After Ronald's release, Jackie returned to her husband but defendant manifested jealousy and expressed a determination to get Jackie back. Armed with two guns and a large knife, he came to the Johnson's apartment, where he engaged in a fight with Johnson. The fight subsided and Johnson, who was using barbiturates, went to bed. Defendant prepared a dose of "speed" (methamphetamine), injected half the dose into his own arm and half into Jackie's. About an hour later Jackie saw defendant in Ronald's bedroom, stabbing Ronald with a large knife. Jackie ran to the manager's office to get help. Defendant left the apartment, leaving his Doberman Pinscher dog

behind. Police arrived, then an ambulance. When the ambulance arrived, Ronald was dead. Police found narcotics in the apartment.

The next morning defendant was arrested while he was with a friend named Esparza. To Esparza, defendant both admitted and denied the killing.

Ronald Johnson had died of multiple stab wounds in the neck. A contributory cause of death was a high blood level of barbiturates, which had blocked normal reactions to alarm or fright. In view of the barbiturates in his blood, it was likely that Johnson had been asleep when he was stabbed.

At the trial the defense sought to impeach Jackie Johnson's testimony by evidence that she was heavily addicted to methamphetamine and suffered hallucinations; that she dealt in narcotics; that on the day Ronald died she had given him 15 "yellows" which he had swallowed with water. The defense also produced evidence designed to show that the methamphetamine defendant injected into himself shortly before Johnson's death had caused defendant to indulge in irrational behavior and hallucinations. The court instructed the jury on diminished capacity.

(1) Initially, defendant charges the district attorney with manipulation of the grand jury, causing that body to indict defendant for murder rather than a lesser included offense. He argues that the district attorney failed to advise the grand jury of their independent power to order production of evidence and failed to inform the grand jury relative to the defense of diminished capacity. He relies upon an ambiguous remark of the grand jury foreman, inferring that the grand jurors were ignorant of their right to call witnesses.[1] The remark does not support the inference drawn by defendant. A grand jury receives a charge by the court following its impanelment; thereafter, it is at liberty to call upon the judge for advice. (Pen. Code, §§ 914, 934.) Aside from specified matters, the statutes do not prescribe the contents of the charge to the grand jury. Any well conceived charge should inform the grand jurors that they may summon witnesses independently of the prosecutor. (Pen. Code, § 939.2.) We assume that the Yolo County Grand Jury had this information. The

---

[1]The foreman of the grand jury stated: "I question whether this conversation about drugs and insanity at this point is important.

"I think it might come up later on in our own discussions but that is something that is our responsibility to determine on the basis that—on the information that we have been given."

claim that the district attorney kept the grand jury in ignorance of this phase of its authority is not supported by the record.

■ The record supports the claim that the district attorney failed to reveal the possibility of an indictment for manslaughter. According to the transcribed discussions between the grand jurors and the district attorney, evidence of defendant's drug condition was of deep interest to the grand jurors and they expressed interest in charging defendant with a lesser crime than murder. The deputy district attorney did not inform them that a drug condition might warrant a manslaughter charge; instead, he spoke only in terms of the insanity defense, thereby failing to inform the grand jury of the available alternatives.[2] A prosecutor need not volunteer possible defense and mitigating alternatives, such as diminished capacity, to the grand jury. Nevertheless, when members of the grand jury ask questions, he owes them the duty of correct advice. In this case the District Attorney of Yolo County did not give the grand jury correct advice.[3] It was not within the prosecutor's prerogatives to close the door to a manslaughter indictment if such was the choice of the grand jury.

On the assumption that the district attorney's misconceived advice resulted in a murder rather than a manslaughter indictment, no miscarriage of justice occurred, for the trial jury accepted defendant's diminished capacity defense and returned a manslaughter verdict. In reviewing for a miscarriage of justice, this court has an independent power to consider the record. (Cal. Const., art. VI, § 11.) Evidence that defendant was hallucinating when he killed Johnson was less than convincing. He was intensely jealous of Johnson, wanted Johnson's wife, had previously assaulted and threatened to kill him and had arrived at the apartment heavily armed. Following the stabbing, witnesses ascribed to him a rational demeanor. Quite aside from the doubt which the grand jurors had expressed, it is this court's opinion that the trial evidence would have supported a verdict of premeditated murder. In returning a manslaughter verdict, the trial jury gave defendant the benefit of all possible doubt: There is no reasonable probability that a manslaughter indictment would have resulted in a verdict of a lesser crime than

---

[2]For example, the following exchange took place:

"[Juror]: Yes, but you could have charged him with manslaughter, couldn't you?

"[District Attorney]: Certainly. And you can charge him with manslaughter if you want to charge him with manslaughter, but the question is whehter [*sic*] the—but manslaughter has nothing to do with sanity. Don't confuse that."

[3]The Attorney General is requested to bring this opinion to the specific attention of the District Attorney of Yolo County.

voluntary manslaughter; hence no miscarriage of justice resulted. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

■ Next, defendant charges the trial court with error in rejecting his offer to impeach Jackie Johnson by showing that she had been dealing in narcotics. As described in defendant's brief, his theory was that Jackie was biased and was fabricating her testimony to avoid prosecution. The court's ruling was a proper exercise of discretion under Evidence Code section 352. Other evidence portrayed the lifestyle of Jackie Johnson and her husband, their heavy use of narcotics and barbiturates, the pending felony charge against her in another county and her arrest with her husband on charges of possessing a machine gun and barbiturates. Other witnesses had corroborated Jackie's testimony regarding defendant's animosity toward her husband. The court could reasonably conclude that defendant's offer of proof proposed a round about and time-consuming effort to impeach a witness whose untrustworthiness had already been portrayed to the jury.

■ After defendant took the stand in his own defense, the prosecution called his former parole agent as a rebuttal witness. We reject defendant's claim that the court abused its discretion in permitting the parole agent to testify. Defendant had denied using drugs other than amphetamine; the parole agent testified that tests had been positive to use of morphine and methamphetamine. Defendant had testified to his presence in the Johnson apartment on the night of the murder; the agent testified that defendant had denied being present. According to defendant, he had discussed with the parole agent the possibility of moving to the Bay Area; the latter denied such a discussion. Defendant's credibility, particularly relative to his claim of drug-induced hallucinations, was a central issue. The court did not abuse its discretion in permitting the parole agent's rebuttal testimony.

■ Defendant attacks his conviction under Penal Code section 12021 as well as the finding of two prior convictions, charging the trial court with failure to give the admonitions required by *In re Yurko,* 10 Cal.3d 857, 863 [112 Cal.Rptr. 513, 519 P.2d 516]. (See also, *In re Foss,* 10 Cal.3d 910, 930 [112 Cal.Rptr. 649, 519 P.2d 1073].) In open court (but outside the jury's presence) defendant's attorney stipulated with reference to the section 12021 charge that defendant was an "ex-con." Defendant admitted two prior felony convictions, one for violation of title 21, section 174, of the United States Code and one for violation of section

11500 of the Health and Safety Code. The trial court said, "You understand that you are entitled to a hearing on whether or not that is a valid prior conviction. [¶] But I understand from your Counsel you are willing to admit that prior conviction this morning, is that correct?" At that point the judge failed to inform defendant of the constitutional rights he was waiving or the penalties he would incur as a result of his admission, thus violating the demands of *In re Yurko, supra.*

The factors which influenced the court in *Yurko* to apply the *Boykin-Tahl* rule to admissions of priors do not necessitate the same approach to stipulations of counsel admitting factual elements of a criminal charge. (*People* v. *McCoy,* 40 Cal.App.3d 854, 859 [115 Cal.Rptr. 559].) In *McCoy,* the stipulation admitted the chemical composition of some capsules but there, as in this case, counsel made a tactical trial decision. In this case the stipulation would preclude the prosecutor from introducing evidence of defendant's prior crimes unless defendant elected to testify, in which case they could be used for impeachment. The stipulation admitted one element of the offense charged. (*Levy* v. *Superior Court,* 31 Cal.App.3d 427, 429 [107 Cal.Rptr. 384].) It represented a tactical decision which would prevent a jury trial of an issue which the defense attorney did not believe should be tried. Such a tactical decision need not be reviewed in open court with a view to recordation of the defendant's personal consent. (*People* v. *McCoy, supra,* 40 Cal.App.3d at pp. 859-860.) With reference to the charge of violating section 12021, we conclude that defendant's attorney could validly stipulate to defendant's status as a convicted felon without the necessity of the *Boykin-Tahl* admonition.

■ Relative to the status of the two prior convictions as an augmentation of prison term, the Attorney General correctly concedes that the trial court erred in accepting defendant's admission of the prior convictions without first having given him the admonitions required by *In re Yurko, supra.* If prejudice appears, this error requires that the finding of prior convictions be set aside. (*In re Yurko, supra,* 10 Cal.3d at p. 864.) We turn to the prejudice inquiry:

The two prior convictions were admitted; hence the record on appeal forecloses inquiry into their validity. Absent a record, the reviewing court cannot measure the defendant's ability to avoid them. We can measure prejudice only by their effect upon his sentence.

The trial court imposed consecutive sentences for voluntary man-slaughter and for the weapons violation, each being punishable by a maximum term of 15 years. (Pen. Code, §§ 193, 12021.) In the absence of specific statutory minima, the minimum term for each is six months. (Pen. Code, § 18b.) Without any augmentation, defendants' minimum consecutive sentences total one year. The jury found and, in pronouncing judgment, the trial court found, that defendant had been armed with a deadly weapon at the time of the homicide, thus evoking the augmented minimum term provided by Penal Code section 3024. Section 3024 establishes minimum terms for a defendant armed with a deadly weapon—four years if he has a prior felony conviction, two years if he does not. A person charged with murder but convicted of voluntary manslaughter is vulnerable to this additional penalty. (*People* v. *Strickland,* 11 Cal.3d 946, 961 [114 Cal.Rptr. 632, 523 P.2d 672].) Thus inclusion in the judgment of the two improperly admitted felony convictions extended defendant's minimum term and caused prejudicial disadvantage.

Defendant has sought unqualified reversal of his conviction. This appeal gives him partial success—his conviction will be affirmed but the *Yurko* violation requires that we set aside the finding of two prior convictions. Faced with that partial success, an appellant would urge that the judgment be modified by striking the prior convictions and affirmed as so modified. He would draw an analogy to *In re Candelario,* 3 Cal.3d 702 [91 Cal.Rptr. 497, 477 P.2d 729], and *People* v. *Hartsell,* 34 Cal.App.3d 8 [109 Cal.Rptr. 627]. In both cases the trial judge had omitted a prior conviction from the imposition of judgment, then attempted to patch up the error by adding it to the abstract of judgment. In *Candelario,* on habeas corpus, the Supreme Court ordered the prison authorities to disregard the prior conviction. In *Hartsell,* on appeal, the appellate court ordered the prior conviction stricken and affirmed the judgment as modified. In both cases the convicted person was benefited by incapacitation of his prior conviction without inquiry into its existence or validity.

We find no reported decision considering the procedural impact of a *Yurko* violation.[4] We reject the analogy to *Candelario* and *Hartsell.* In both the latter decisions, judicial error had characterized the imposition

[4]The *Yurko* decision was prospective, applying only to admissions of prior convictions occurring on or after March 7. 1974. when the *Yurko* opinion was filed. (10 Cal.3d at pp. 865-866.) Thus neither *Yurko* nor *Foss* dealt with the error's effect on the pending trial and judgment of guilt.

of a criminal judgment; that kind of error may be corrected only under extremely limited circumstances. (See *People* v. *Hartsell, supra,* 34 Cal.App.3d at p. 13.) Here judicial error occurred in the proceedings before judgment. There is no reason to distinguish this from any other kind of error in the course of trial. A number of decisions have found error in the proceedings leading up to an adjudication of prior conviction (although not error of the *Yurko* variety). Those decisions resulted in reversal for a limited new trial. (*People* v. *Ebner,* 64 Cal.2d 297, 305 [49 Cal.Rptr. 690, 411 P.2d 578]; *People* v. *Garn,* 246 Cal.App.2d 482, 488 [54 Cal.Rptr. 867]; *People* v. *Cheatham,* 263 Cal.App.2d 458, 464 [69 Cal.Rptr. 679]; *People* v. *Collins,* 228 Cal.App.2d 460, 465 [39 Cal.Rptr. 595]; *People* v. *Figuieredo,* 146 Cal.App.2d 807, 810 [304 P.2d 161].) A similar procedure should prevail here. Defense admission of the priors in the trial court prevented the People from establishing their existence and validity. The constitutional concerns expressed in *Yurko* do not demand the emasculation of prior convictions without supplying the People that opportunity. (See *In re J.F.,* 268 Cal.App.2d 761, 767-768 [74 Cal.Rptr. 464].)

The judgment convicting defendant of voluntary manslaughter and of violating section 12021 is affirmed. That part of the judgment declaring the existence of defendant's two prior felony convictions is reversed. The cause is remanded to the trial court with a direction to re-sentence defendant after a limited new trial on the issue of the two prior convictions.

Janes, J., and Paras, J., concurred.

A petition for a rehearing was denied August 14, 1975, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1975.