**UNITED STATES of America,
Appellee,**

v.

**Kenneth Eugene WHITE,
Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Jamie Dean ALEXANDER,
Appellant.**

**Nos. 71-2488, 71-2489.**

United States Court of Appeals,
Ninth Circuit.

July 5, 1972.

Rehearing Denied Aug. 16, 1972.

Howard R. Lonergan (argued), A. I.
Berstein, Portland, Or., for appellants.

D. Richard Hammersley, Asst. U. S.
Atty. (argued), Mallory Walker, Asst.
U. S. Atty., Sidney I. Lezak, U. S. Atty.,
Portland, Or., for appellee.

Before HUFSTEDLER and CHOY,
Circuit Judges, and SCHNACKE, District Judge.*

PER CURIAM:

Jamie D. Alexander appeals his conviction by a judge without a jury for
possession of twelve bottles of drugs

*The Honorable Robert H. Schnacke, United States District Judge for the Northern District of California, sitting by designation.

without a prescription, in violation of 21 U.S.C. § 331(q) (3) (B).[1] Alexander and Kenneth E. White appeal their convictions by a jury of receipt and concealment of stolen goods which had been moved in interstate commerce, in violation of 18 U.S.C. § 2315, and of conspiracy to commit the substantive crime. We affirm.

█ 1. White and Alexander were arrested by the FBI in Portland, Oregon, in possession of about 17,860 false teeth worth between $25,000 and $26,000, which had been stolen from the Dental Specialty Company in Denver, Colorado. An accomplice testified for the Government that she had told White and Alexander the teeth were pilfered, but both men denied knowledge that the goods were in fact stolen. Their objection to the jury instruction that possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may rationally infer that the person involved knew the property was stolen, is meritless. United States v. Linder, 442 F.2d 419 (9th Cir. 1971); United States v. Redd, 438 F.2d 335 (9th Cir. 1971).

█ 2. During the examination of the FBI agent who interviewed White after his arrest, the following colloquy occurred:

Prosecutor: Did he [White] agree to say anything or talk to you at all?

Witness: He agreed to talk about certain things. He would not talk about the reason for the arrest.

White contends that this statement called for the jury to draw an adverse inference from his decision to claim his Fifth Amendment right to remain silent. The witness was not entirely responsive to the question asked; the prosecutor sought to elicit only White's Portland address and telephone number. The inadvertent situation here is not comparable to the overt prosecutorial misconduct

of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The error, if any, was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967).

3. Alexander objects to the Government's use of a prior Oregon conviction to impeach him when he took the stand in his own behalf. Three years before the trial, Alexander was found guilty of manslaughter abortion, a felony in violation of ORS § 163.080 (repealed, 1969). He received a suspended sentence, with five years probation.

█ Alexander argues that this conviction was improperly used to impeach him. First, he contends that since his sentence was suspended, no judgment was imposed. He was, however, found guilty of a felony and received probation. The guilty finding was final, and regardless of the penalty, provided sufficient reason for viewing his testimony with suspicion. See, Annot., 14 A.L.R.3rd 1272 (1967). Second, he argues that the conduct involved did not amount to moral turpitude, and thus cannot be used to impeach him under United States v. Griffin, 378 F.2d 445 (6th Cir. 1967). However, in this Circuit, any felony, whether or not it involves moral turpitude, may be used to impeach. Burg v. United States, 406 F. 2d 235 (9th Cir. 1969). Third, Alexander alleges that the Oregon abortion law, although repealed, is unconstitutional, thus preventing the use of an invalid conviction for impeachment purposes. Nevertheless, Alexander violated the law as it then was; and this fact was used to impeach his credibility. Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L. Ed.2d 319 (1967), where the Supreme Court held that a conviction obtained in violation of the defendant's right to counsel could not be used to impeach him, is not comparable.

4. The FBI agents who arrested White and Alexander asked the Portland

---

1. The 1970 Drug Abuse Prevention and Control Act, 21 U.S.C. § 801 et seq., repealed §§ 331(q) (3) (B) and 360a(c)

(2). However, the Act contained the usual savings provision.

police to impound Alexander's car. Alexander refused to consent to a search of the car, and the agents obtained a search warrant. After obtaining the keys from Alexander, the FBI searched the car, finding on the floor of the back seat immediately behind the driver's seat a box containing twelve bottles of pills. The bottles lacked price tags or other sales identification, but bore labels warning that a prescription was required. No doctor's prescription labels were on the bottles. The bottles and the pills were seized. When analyzed, the pills were identified as drugs the possession of which without a valid prescription violated 21 U.S.C. §§ 331(q) (3) (B) and 360a(c) (2).

Alexander contends that the seizure of the pills should have been suppressed as beyond the scope of the search warrant. We assume that the pills were not encompassed by the warrant. Nevertheless, the FBI had a valid warrant to search the car. In the course of executing the valid warrant, the agent saw the contraband pills in plain view. He was not constitutionally commanded to shut his eyes and to forego seizure of the contraband. *Cf.* Coolidge v. New Hampshire, 403 U.S. 443, 464–473, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

5. The indictment against Alexander did not allege, nor did the Government offer any proof that he did not have a prescription for the drugs. He now asserts that this omission resulted in a failure to prove one of the elements of the offense. However, the valid physician's prescription exception to § 360a(c) (2) is an affirmative defense, which must be pleaded and proved by the defendant. Tritt v. United States, 421 F.2d 928 (10th Cir. 1970); United States v. Rowlette, 397 F.2d 475, 479 (7th Cir. 1968). *Cf. also*, United States v. Safeway Stores, Inc., 252 F.2d 99, 101 (9th Cir. 1958); United States v. Young, 422 F.2d 302, 306, n. 11 (8th Cir. 1970).

6. Finally, Alexander asserts that the evidence adduced was insufficient to prove that he had possession of the drugs. Viewing the evidence in the light most favorable to the jury verdict, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), there was sufficient evidence that Alexander had control and dominion over the car in which the drugs were found. He owned it. He had driven it the day of the arrest, and he had the keys. This is not a case like Delgado v. United States, 327 F.2d 641 (9th Cir. 1964), in which marijuana was found in a drawer of a night stand in the defendants' bedroom. In *Delgado*, it was nothing more than speculation whether the man or the woman or both had possession of the marijuana. Here there is only uncorroborated hearsay that White was in the car with Alexander on the day of the arrest. The evidence was sufficient to establish that the automobile was under Alexander's exclusive *control and dominion*. Hernandez v. United States, 370 F.2d 171, 172 (9th Cir. 1966).

Affirmed.