The **UNITED STATES**

v.

**Bennie GRAVES.**

**Crim. No. 73–212.**

United States District Court, W. D. Pennsylvania.

May 13, 1975.

James A. Villanova, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Paul D. Boas, Pittsburgh, Pa., for defendant.

## OPINION

SCALERA, District Judge.

Defendant Bennie Graves was indicted for violations of 18 U.S.C. § 922(a)(6) [1] and 18 U.S.C. Appendix § 1202(a)(1).[2] Count One charges that defendant made a false and fictitious statement to a firearms dealer, to wit that he had not been convicted of a crime punishable by more than one year's imprisonment. Count Two charges that defendant, after being convicted of auto larceny in the Court of Common Pleas of Allegheny County, Pennsylvania, received and possessed a F.I.E. 12-gauge shotgun that had been transported in interstate commerce. Defendant waived his right to a jury trial and the case was tried before the court. This opinion constitutes findings of fact and conclusions of law in compliance with Rule 23(c) of the Federal Rules of Criminal Procedure.

Defendant's counsel and the government stipulated to the following: On April 15, 1971, defendant was convicted in the Court of Common Pleas of Allegheny County of larceny of an automobile,[3] a crime punishable by a term exceeding one year. On January 19, 1973, defendant, in connection with the acquisition of a firearm from Braverman Arms Company, 912 Penn Avenue, Wilkinsburg, Pennsylvania, a licensed dealer in firearms, certified in writing to said dealer that he had not been convicted of a crime punishable by a term of imprisonment exceeding one year. Defendant in fact knew that he had been convicted on April 15, 1971 of auto larceny. On January 19, 1973, defendant knowingly received a 12-gauge shotgun. The gun was manufactured outside of Pennsylvania and transported into the state "sometime within two years prior to January 19, 1973."

The government submits that defendant has admitted every element of the crime and should be found guilty. Defendant, while admitting the stipulated facts, disagrees with the government over the inferences to be drawn from those facts.

At trial, defendant orally moved for judgment of acquittal. The motion is based on the same arguments defendant made in support of his motion to dismiss the indictment, which this court denied. In presenting the motion, defendant rested on the brief he offered in support of his motion to dismiss the indictment. In contesting the motion, the government relied on the three-page brief it filed in opposition to the motion to dismiss the indictment.

## I

When he was arrested for the auto larceny set forth in the indictment, de-

---

1. 18 U.S.C. § 922 provides:

   (a) It shall be unlawful—

   "(6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter."

2. 18 U.S.C. Appendix § 1202 provides:

   "(a) Any person who—

   "(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,
   *    *    *    *    *
   and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

3. Our examination of the state file indicates that defendant, at the same time, was convicted of receiving stolen goods and operation of a vehicle without the consent of the owner. The case was docketed at 9171 December 1970.

fendant was 17 years, 7 months old.[4] Defendant stipulated to the subsequent larceny conviction. He now challenges the certification process that preceded his trial. He argues that at his certification hearing he was denied certain constitutional rights set forth by the Supreme Court in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and further delineated in United States ex rel. Turner v. Rundle, 438 F.2d 839 (3d Cir. 1971). Because the certification was constitutionally invalid, defendant argues, the auto larceny conviction cannot support a conviction under the indictment in this case.

### A

Defendant was arrested for auto larceny in 1971. At that time, Pennsylvania law provided that any youth under 18 who violated a state law was subject to the exclusive jurisdiction of the juvenile court,[5] and that the youth could be "certified" for trial in criminal court if the interests of the state so required.[6] Defendant was so certified.

In *Kent,* supra, the Supreme Court said that the transfer of a youth from the juvenile court to the adult criminal court is a crucial step in the adjudication of the juvenile's rights. The juvenile court has wide discretion in determining whether such a transfer should be ordered but it cannot, the Court said, order the transfer arbitrarily. There must be certain procedural

safeguards to meet the requirements of due process.

The Third Circuit has held that the safeguards discussed in *Kent* were constitutionally mandated. *Turner,* supra. The court specified what was required in a certification proceeding. The juvenile must have due notice of the charges against him. He must have access to his social records. At the certification hearing, he must be afforded the chance to cross-examine and to present evidence. Finally he must be provided with an adequate statement of reasons explaining the judge's decision.[7]

### B

On October 12, 1970, defendant was arrested on an auto larceny charge. One month later a certification hearing was held.[8] At the hearing, the arresting officer testified to the details of defendant's apprehension. The officer said that when he spotted the stolen car, defendant was trying to start it. When he failed to get it started, defendant got out of the car, walked to a nearby gas station, then returned to the car. At this time, the officer and his partner approached the vehicle. Defendant got out of the car and started to run. After a two-block chase, he was arrested by the officers.

After the arresting officer completed his testimony, he was questioned by defendant's counsel. The owner of the

---

4. Defendant's birthdate is contained in his juvenile court file. We have examined the file in detail.

5. Act of June 2, 1933, P.L. 1433, § 2, 11 P.S. § 244 (1965). The provision has since been replaced. Act of December 6, 1972, P.L. 1464, No. 333, § 3, 11 P.S. § 50–103 (1974).

6. At that time, the following Pennsylvania statute was in effect: "Whenever any child, being above the age of fourteen years, has been held by any magistrate, alderman or justice of the peace for any offense, other than murder, punishable by imprisonment in a State penitentiary, the judge of the juvenile court having jurisdiction, if, in his opinion, the interests of the State require a prosecu-

tion of such case on an indictment, may certify the same to the district attorney of the county, who shall thereupon proceed with the case * * * as though the jurisdiction of the juvenile court had never attached." Act of June 2, 1933, P.L. 1433, § 18, 11 P.S. § 260 (1965). The statute has since been replaced by Act of December 6, 1972, P.L. 1464, No. 333, § 7, 11 P.S. § 50–303 (1974).

7. While the right to counsel was not listed in *Turner*, the court later stated that it was included among the *Kent* rights. Smith v. Yeager, 459 F.2d 124 (3d Cir. 1972).

8. Defendant submitted a copy of the certified transcript of the hearing.

stolen car then testified as to the circumstances of the theft.

After noting that two months earlier he had certified defendant to criminal court on another auto larceny charge,[9] the juvenile court judge certified defendant for trial in the adult criminal court. His order was as follows:

"And now, to wit, November 16, 1970, after hearing it is ordered that (said) case as to above named child be certified to the Court of Common Pleas of Allegheny County, Criminal Division, County pay costs. Said child committed to Allegheny County Jail."

In December, 1970, an indictment was returned. It charged defendant with larceny, receiving stolen goods, and violation of the Motor Vehicle Code. Defendant pleaded not guilty. Defense counsel was appointed and defendant waived jury trial.

On April 15, 1971, the court found defendant guilty of auto larceny. He was sentenced to the State Correctional Institution at Camp Hill. Defendant did not appeal from this conviction, nor did he file any motions under Pennsylvania's Post Conviction Hearing Act.

Defendant contends the certification hearing was constitutionally defective. He argues that the judge prejudged his case, that the judge failed to make a detailed and reviewable consideration of the facts, and that the judge failed to supply a statement of reasons for his decision.

Defendant claims these defects render the auto larceny conviction constitutionally invalid. Such a conviction, defendant contends, cannot be introduced into this prosecution.

## C

█ A defendant can attack the validity of a conviction when it is introduced in a subsequent prosecution. In his brief, defendant did not focus on this issue. He did cite United States v. Lufman, 457 F.2d 165 (7th Cir. 1972). Lufman was charged with a violation of 18 U.S.C. App. § 1202(a). To show that defendant was a convicted felon, the government offered into evidence a 1938 conviction. Defendant objected on the ground that the 1938 conviction was constitutionally invalid. The Seventh Circuit, in reversing the trial court, held that a defendant could collaterally attack the validity of a conviction when it is introduced in a subsequent prosecution. United States v. DuShane, 435 F.2d 187 (2d Cir. 1970); United States v. Thoresen, 428 F.2d 654 (9th Cir. 1970).

These cases rely on the Supreme Court's holding in Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). In a prosecution brought in part under a Texas recidivist statute, the state offered into evidence Burgett's four prior convictions. Examination of transcripts indicated that in at least two of his prior convictions, the defendant was not represented by counsel. After instructions that it should not consider the prior convictions for any purpose, the jury found defendant guilty of assault with intent to murder. On appeal, the Supreme Court ordered that defendant be granted a new trial. The Court held that a conviction obtained in violation of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), could not be used against a defendant "either to support guilt or enhance punishment." 389 U.S. at 115, 88 S.Ct. at 262, 19 L.Ed. 2d at 325. The Court subsequently applied *Burgett*, supra, where the constitutionally invalid prior convictions were introduced for sentencing purposes, (United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)), and to impeach a defendant's credibility as

---

9. On September 10, 1970, defendant was certified to the criminal court for trial on an auto larceny charge. An indictment was returned on February 11, 1971. On April 22, 1971, trial of the case was postponed. The record reveals no further proceedings.

On August 27, 1968, defendant was certified to the adult court for trial on an aggravated assault and battery charge. Defendant was subsequently convicted and placed on probation for three years.

a witness. Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

### D

In *Burgett* and its progeny (*Tucker* and *Loper*) and in leading circuit cases, the prior conviction was the product of a trial in which the defendant did not have and did not waive the assistance of counsel. In the case *sub judice*, the defendant claims his prior conviction was constitutionally invalid because of a denial of *Kent* rights.

Defendant cannot mount a *Burgett* attack against a conviction because of a violation of *Kent* rights. The *Burgett* rule was founded on the Supreme Court's decision in *Gideon*, supra, that denial of the right to counsel in a criminal trial invalidates the conviction. The Court said in *Burgett* that to allow the introduction of the conviction would seriously erode the principles enunciated in *Gideon*. In both *Tucker* and *Loper*, the court reiterated its reliance on *Gideon*.

In light of the fact that the cases are based on *Gideon* and deal only with the right to counsel, the *Burgett* rule cannot be extended to the denial of *Kent* rights. We are aware that *Kent* was grounded on the right to counsel (as well as due process). 383 U.S. 556, 86 S.Ct. 1055, 16 L.Ed.2d 95. The transcript of the hearing in this case, however, reveals defendant was represented by counsel. Defendant complains of other deficiencies.

There is a suggestion in United States v. Penta, 475 F.2d 92 (1st Cir. 1973), that *Burgett* applies to denial of constitutional rights other than the right to counsel that affect the integrity of the fact-finding process at a criminal trial. We need not consider this suggestion. Here, the denial of *Kent* rights allegedly occurred in a hearing prior to trial.

We are not prepared to accept the conclusion of the Fifth Circuit that *Burgett* applies to any constitutional right made applicable to the states by the Fourteenth Amendment. Beto v. Stacks, 408 F.2d 313 (5th Cir. 1969). *Stacks* ignored the fact that the purpose of *Burgett* was to prevent the erosion of the right to counsel recognized in *Gideon*. We also do not agree that *Burgett* applies to a denial of a "fundamental constitutional right." United States v. Martinez, 413 F.2d 61, 63 (7th Cir. 1969).

We find that the defendant's auto larceny conviction was properly introduced in this case and supports a conviction in this case.

### II

Defendant argues that in order for him to be convicted under 18 U.S.C. § 922(a)(6), it must be shown that he intended to deceive the firearm dealer to whom the false statement was made. Defendant stipulated that at the time of the transaction he knew he had been convicted of a felony. He argues, however, that there is no proof that he knew the sale of the gun to him violated the law. Without that, there is no support for the conclusion that defendant intended to deceive the dealer as to a material fact affecting the lawfulness of the sale.

One is presumed to intend the natural and probable consequences of the acts knowingly done or knowingly omitted.[10] Government of Virgin Islands v. Lake, 362 F.2d 770 (3d Cir. 1966); United States v. Price, 464 F.2d 1217 (8th Cir. 1972). Defendant certified in writing that he had not been convicted of a felony punishable by more than one year's imprisonment. The reasonable inference is that the purpose of his actions was to deceive the gun dealer.

We conclude that defendant did intend to deceive the gun dealer.[11]

### III

Count Two of the indictment charges defendant with receiving and possessing a firearm in violation of 18

---

10. Specific intent is not an element of the crime in question. United States v. Cornett, 484 F.2d 1365 (6th Cir. 1973).

11. We note also that the statute in question proscribes statements "intended or *likely* to deceive" a gun dealer.

U.S.C. Appendix 1202(a)(1). Receiving and possessing are separate offenses under the statute. To convict a defendant on either offense, it is required that the government show some nexus between the unlawful act and interstate commerce. As to the offense of possessing, the interstate commerce requirement is satisfied if it is shown that, at the time of the possession, the firearm was moving interstate, or on an interstate facility, or if the possession affected commerce. Less is required to satisfy the interstate commerce requirement as to the offense of receiving. United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

Defendant argues that the government has satisfied the interstate commerce requirement as to the offense of receiving but not as to the offense of possessing. The government has charged both receiving and possessing in the same count. To succeed under the count, defendant argues, both offenses must be proved. Since the government has not proved receiving, defendant concludes, the count must fail.

■ We cannot agree with the defendant that the government has not satisfied the interstate commerce requirement as to the offense of possessing. The courts have liberally applied *Bass*. See United States v. Pleasant, 489 F.2d 1028 (8th Cir. 1974). It has been held that the interstate commerce requirement is met by proof that anytime prior to possession the firearm traveled in interstate commerce. United States v. Mullins, 476 F.2d 664 (4th Cir. 1973). See also United States v. Letky, 371 F.Supp. 1286 (W.D.Pa.1974).

The defendant stipulated that the firearm in question was manufactured outside of Pennsylvania and transported into the state sometime within two years prior to the date of the alleged offense. We find that this satisfies the interstate commerce requirement enunciated in *Bass*. Our finding renders unnecessary consideration of defendant's argument that, in order to succeed under Count

Two of the indictment, the government must prove both receiving and possessing.

The defendant is adjudged guilty of Counts One and Two of the indictment.

An appropriate order will be entered.