371 A.2d 874

**COMMONWEALTH of Pennsylvania**

v.

**Raymond JONES, Appellant.**

Superior Court of Pennsylvania.

Submitted June 16, 1975.

Decided Dec. 15, 1976.

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

The instant appeal is from the denial of appellant's request for a new trial pursuant to a PCHA petition filed

in the court below. The principal issue on appeal is whether a conviction is valid if it is obtained in part by use of a prior conviction which is invalidated *after* it has been so used. We agree with the court below that, on the facts of this case, appellant's request for a new trial was properly denied.

In November, 1969 appellant was arrested and charged with rape, robbery and carrying a concealed deadly weapon. After a jury trial in May of 1970, appellant was found guilty of all charges. He was subsequently sentenced to concurrent terms of five to ten years on the rape and robbery convictions, and sentence was suspended on the weapons offense. Suffice it to say that the outcome of the trial rested squarely on the credibility of the victims versus the credibility of appellant. Without a doubt, a damaging blow to appellant's defense occurred when he testified in his own behalf and, from cross-examination by the Commonwealth, the jury learned that appellant had been convicted of rape in 1961 and assault and battery in 1965. Although this revelation was objected to at trial, raised in post-trial motions, and argued on appeal to this court as a violation of due process, we affirmed the judgments of sentence per curiam, and the Supreme Court denied allocatur. *Commonwealth v. Jones*, 219 Pa.Super. 723, 280 A.2d 446 (1971), No. 242 Allocatur Docket Nos. 1414–16, October Term, 1970. There began a series of unsuccessful efforts to collaterally attack the conviction in both the courts of this Commonwealth and the federal courts.

On July 30, 1973, appellant filed a Post Conviction Hearing Act petition alleging that his waiver of his right to appeal from the *1961* rape conviction was not knowing and intelligent. The hearing court agreed on the basis of *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L. Ed.2d 811 (1963); *Griffin v. Illinois*, 351 U.S. 12, 76 S. Ct. 585, 100 L.Ed. 891 (1956); and *Commonwealth v. Wilson*, 430 Pa. 1, 241 A.2d 760 (1968), and granted ap-

pellant the right to file post-trial motions nunc pro tunc. It was then discovered that the stenographic notes of testimony of the 1961 trial had not been preserved, so the court ordered a new trial. Because of the staleness of the case, the Commonwealth nol prossed it on April 16, 1974.

Appellant's now long-running show returned to a familiar theater, the PCHA court, but this time it had a new script. Appellant argued that, because an unconstitutional conviction had been used to impeach his credibility at his 1970 rape and robbery trial, *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) and *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed. 2d 592 (1972) compelled that he be granted a new trial on those rape and robbery offenses for which he was convicted. The hearing court found appellant's argument sufficiently persuasive to reduce his sentence, since the 1961 rape conviction had been used to enhance punishment,[1] but disagreed that the use of the conviction for impeachment was unconstitutional so as to require a new trial. We will affirm that decision.

*Tucker* and *Loper* were cases which involved the use of convictions invalid under *Gideon v. Wainwright,* 372 U. S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) at subsequent trials, although the *Gideon* errors were not raised until the judgments on the subsequent convictions had become final. Relying on *Burgett v. Texas,* 389 U.S. 109, 88 S. Ct. 258, 19 L.Ed.2d 319 (1968),[2] the Court stated in *Lo-*

1. The propriety of this aspect of the hearing court's decision has not been challenged.

2. The essence of the Court's rationale in *Burgett v. Texas* is capsulized in *Loper v. Beto,* 405 U.S. at 481, 92 S.Ct. at 1018 as follows:

   " 'To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that . . . right' 389 U.S. at 115, 88 S.Ct. at 262, 19 L.Ed. at 324."

*per*: "Unless Burgett is to be forsaken, the conclusion is inescapable that the use of convictions constitutionally invalid under *Gideon v. Wainwright* to impeach a defendant's credibility deprives him of due process of law." 405 U.S. at 483, 92 S.Ct. at 1019. The result, of course, was fully retroactive application of *Gideon* even for the purposes of collateral attack.

However, to apply the doctrine of *Loper, Tucker* and *Burgett* to the case at bar is to expand that doctrine beyond all reasonable limits. First, the rationale proposed by appellant and accepted by the dissent would grant a new trial in *any* case where a conviction used to impeach appellant's credibility is subsequently invalidated for *any* reason which *arguably* bears upon the integrity of the fact-finding process involved in that conviction. Even if we were to accept only that point of view, our decision would be manifestly impractical and portend havoc in the administration of criminal justice, especially in the context of the Post Conviction Hearing Act.[3] However,

---

3. It should be noted that under its rationale the dissent suggests not only that a new trial is required when the conviction used to impeach is invalidated subsequent to the conviction appealed, but by the very posture of the instant case the dissent also suggests that convictions which became final prior to *Loper* are equally susceptible to attack. Consequently, any person who testified at his trial and was impeached by prior convictions would have new grounds and renewed motivation for attacking impeaching convictions long since thought final. In other words, the dissent would make its "penumbral" *Loper* rationale fully retroactive. If one may further extrapolate from the dissent's rationale that convictions invalid under the *Loper*-type rationale similarly cannot be used to impeach, combined with the fact that the impeaching conviction may be overturned after the trial of the case appealed, the array of dominoes would be complete. Should any of those convictions fall, then all the convictions which follow would fall also. Indeed, it might be that an appellant need not have testified at his trial in order to attack it under such a *Loper*-type rationale. For example, suppose the instant appellant's argument were that he did not testify at his rape trial because of the existence of another rape conviction which would have been used to impeach him, but which has since been invalidated? This question was raised, but not decided, in *United States v. Cole*, 463 F. 2d 163, 170 (2d Cir. 1972).

appellant and the dissent compound their error by arguing that convictions invalidated as a consequence of *Griffin v. Illinois* and *Douglas v. California* are convictions which fall within that class. This aspect of appellant's argument is palpably erroneous, both logically and constitutionally.

*Douglas* and *Griffin* have been misconstrued in the dissenting opinion. Simply put, *Douglas* and *Griffin* are not decisions involving violations of an individual's "appellate rights" in any sense other than incidentally; *Douglas* and *Griffin* are equal protection cases where the privilege, in a constitutional sense, to have an attorney on appeal or to have available a transcript of a trial record is denied to an individual because of his poverty. Discrimination on the basis of wealth is the essence of those decisions, not due process of law (i. e., appellate rights). Of course, if one casts those cases in terms of due process, the argument that a prior conviction cannot be presumed valid when there is no transcript of trial is far more persuasive. However, that is not the principle upon which *Douglas* and *Griffin* rest.

In *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L. Ed.2d 341 (1974), not cited in the dissenting opinion,[4] the Supreme Court confronted the question of whether *Douglas* and *Griffin* were decisions resting on due process or equal protection. In concluding that the foundation for those decisions was the equal protection clause of the fourteenth amendment, the court stated:

"The defendant needs an attorney on appeal not as a shield to protect him against being 'haled into court' by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt. This difference is significant for,

4. Instead, the dissent prefers citing decisions which made *Douglas* and *Griffin* retroactive, and asserts that retroactivity is "a result indicating the Court's view that the denial of the right to appeal creates the possibility of an unreliable verdict." [Emphasis added.]

while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide any appeal at all. *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894). . . . Unfairness results only if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty. That question is more profitably considered under an equal protection analysis." *Id.* at 610–11, 194 S.Ct. at 2444. See also *Griffin v. Illinois,* 351 U.S. at 18, 76 S.Ct. 585.

■ It is obvious, therefore, that *Douglas* and *Griffin* do not hold that the lack of an appeal unconstitutionally taints the reliability of a conviction. On the contrary, as *Ross v. Moffitt* reiterates, a criminal conviction from which a state allows no appeal is presumptively valid under the constitution; but, where an appeal is provided by a state, the question of the right to an attorney and to a transcript of the trial record is one of equal protection under the law and not one of due process.

Predictably I think, most of the federal courts which have come to grips with the problem presented in the instant cause have refused to be as expansive as the dissent today proposes. In *United States v. Penta,* 475 F.2d 92 (1st Cir. 1973) the court expressly stated that it would limit *Loper* to *Gideon* situations and refused to apply the *Loper* rationale in situations where convictions used to impeach were subsequently invalidated because of an illegal search and seizure. But see *Beto v. Stacks,* 408 F.2d 313 (5th Cir. 1969).[5] In *United States v.*

5. Although *United States v. Martinez,* 413 F.2d 61 (7th Cir. 1969) is sometimes cited as supporting *Beto v. Stacks,* its procedural posture was completely different. Therein the question was whether, at sentencing, a convicted defendant could challenge the constitutional validity of prior convictions which the government sought to introduce to enhance punishment under a recidivist statute. The court held that such challenges should be permitted, and that unconstitutional convictions may not be considered thereafter to increase the sentence.

*Graves,* 394 F.Supp. 429 (W.D.Pa.1975), the court again limited *Loper* to its facts and rejected applying a similar rationale to convictions unconstitutional under *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) (constitutional rights of juvenile offenders in cases to be certified to criminal court). And, in *United States v. White,* 463 F.2d 18 (9th Cir. 1972), the court refused to apply *Burgett* to convictions which occurred under a criminal statute subsequently determined to be unconstitutional. In our estimation, both practically and logically, these are the better reasoned decisions.

Thus, we have concluded that there is no basis constitutionally to determine that the reliability of a criminal conviction is suspect simply because an appellate court has not affirmed it on the merits. That being the case, the applications of the principle of *Loper v. Beto* to convictions invalidated as a consequence of *Douglas* and *Griffin* would be wholly inappropriate even under the broadest reading of *Loper's* holding.[6] Furthermore, as noted above, given the extraordinary burden that such a decision would put on the criminal justice system, the result approved by the dissent would be highly impractical.

Order of the lower court is affirmed.

PRICE, J., files a concurring opinion.

HOFFMAN, J., files a dissenting opinion in which SPAETH, J., joins.

---

**6.** I might add that the lead opinion in *Loper* was merely a plurality opinion. Mr. Justice White wrote a concurring opinion, and Chief Justice Burger, along with Justices Blackmun, Powell and Rehnquist dissented. Given the close division in *Loper,* which involved convictions void under *Gideon,* I doubt that the High Court will leap at the opportunity of extending it to convictions which are constitutionally impaired in any fashion. See, e. g., *United States v. Penta,* supra, cert. denied, 414 U.S. 870, 94 S.Ct. 89, 38 L.Ed.2d 88 (1973).

354

PRICE, Judge, concurring:

Although I agree with Judge Cercone's treatment of the substantive issue in this case, I believe that appellant has not properly preserved it for our review. Therefore, the judgment of sentence of the lower court should be affirmed without reaching the merits.

In 1961, appellant was convicted of assault and battery, aggravated assault and battery, indecent assault, and assault and battery with intent to ravish. On May 11, 1970, appellant was found guilty by a jury of aggravated robbery, carrying a concealed deadly weapon, and forcible rape. After appellant testified at the 1970 trial, evidence of the 1961 convictions, in addition to evidence of convictions on similar charges in 1965, was admitted to impeach his credibility. The earlier convictions were also considered by the sentencing judge. Appellant appealed the 1970 judgment of sentence to this court alleging, *inter alia,* that it was error to admit evidence of the prior convictions because of their prejudicial effect. This court affirmed the judgment of the lower court. *Commonwealth v. Jones,* 219 Pa.Super. 723, 280 A.2d 446 (1971), and the Supreme Court denied allocatur 219 Pa. Super. xxxviii (1973).

Subsequently, appellant filed two PCHA [1] petitions. The first, a counseled petition, challenged the 1961 convictions. The second petition, filed pro se, challenged the 1970 convictions. The latter petition was dismissed without a hearing, but the former petition resulted in a reversal of the 1961 convictions and the granting of a new trial. The earlier convictions were reversed pursuant to *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and the right to appeal was granted nunc pro tunc. When a diligent search uncovered no record of the earlier proceedings, a new trial was mandated. *Commonwealth v. Goldsmith,* 452 Pa. 22, 304 A.2d

1. Act of Jan. 25, 1966, P.L. (1965) 1580, § 1 (19 P.S. § 1180–1) *et seq.* (Supp.1975–76).

478 (1973). The case was nolle prossed on April 16, 1974.

Finally, on September 5, 1974, the appellant filed the PCHA petition presently under consideration, contending that it was error to admit the invalid 1961 convictions to impeach his testimony and to enhance punishment in the 1970 trial. Appellant relied, and continues to rely, on an argument synthesized from *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972); *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), and *Douglas v. California, supra. See also Commonwealth v. Calvert,* 463 Pa. 211, 344 A.2d 797 (1975). Relying on *Tucker,* the PCHA court remanded the case for resentencing, but otherwise denied the relief requested in appellant's petition. The Commonwealth has not appealed that portion of the PCHA court's order remanding for resentencing. On March 5, 1975, appellant was resentenced to two concurrent terms of from four to eight years. From that judgment of sentence, appellant appeals.

Generally, appellant contends that because the invalid convictions were used to impeach his testimony at the 1970 trial, the convictions there obtained must be reversed. However, before we can consider this issue, we must determine whether appellant has properly preserved it for our consideration.[2] Appellant failed to raise the invalidity of his prior convictions at every step of the trial, denying the lower court the opportunity to consider the issue. Thus, we cannot consider it on appeal. *Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975) ; *Commonwealth v. Clair,* 458 Pa. 418, 326 A. 2d 272 (1974). Appellant contends that at the time of

2. Absent extraordinary circumstances, an issue is waived if "[t]he petitioner knowingly and understandingly failed to raise it and it could have been raised before trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under" the Post Conviction Hearing Act. Act of Jan. 25, 1966, P.L. (1965) 1580, § 4 (19 P.S. § 1180–4) (Supp.1975–76).

the 1970 trial, the invalidity of the earlier convictions had not been *established.* However, the convictions were as invalid then as they were when he actually challenged them. This is not a case where a retroactive right has been declared to exist subsequently to appellant's trial. 19 P.S. § 1180-3(c)(12). All the facts available to appellant in 1973, when he filed the successful PCHA petition, were also available in 1970. Therefore, appellant could have presented the issue to the lower court, but failed to do so. *See Commonwealth v. Simon,* 446 Pa. 215, 285 A.2d 861 (1971).

Examined in this light, it is clear that *Loper v. Beto, supra,* is easily distinguishable from the present case. The trial at which Loper was impeached occurred in 1947, prior to the decision in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Thus, the convictions used to impeach Loper were not invalid at that time, or at least, it would have been impossible for him to have established their invalidity. That is not true of the appellant in this case. Here, appellant could have utilized a procedure to protect himself. *See, e. g., Commonwealth v. Sheehan,* 446 Pa. 35, 285 A.2d 465 (1971). Therefore, no procedural default precluded the Supreme Court from considering the issue in *Loper.*[3]

The dissent contends that in order for appellant to have raised the issue in the lower court, he would have had to have anticipated *United States v. Tucker, supra.* I do not believe that this is so. In *Tucker,* the Court applied *Gideon v. Wainwright, supra,* both *retroactively* and *collaterally.* In other words, not only were the convictions obtained in violation of *Gideon* retroactively in-

---

3. It has long been recognized that a procedural default in a state court proceeding can serve as an "adequate state ground" to prevent review of Federal Constitutional claims. *Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *Wolfe v. North Carolina,* 364 U.S. 177, 80 S.Ct. 1482, 4 L.Ed.2d 1650 (1960); *Edelman v. California,* 344 U.S. 357, 73 S.Ct. 293, 97 L.Ed. 387 (1953).

valid, but, collaterally, a conviction obtained using those convictions was also invalid.

In this case, if appellant had raised the invalidity of his 1961 convictions during the 1970 trial, no collateral attack would have been involved. Furthermore, while the issue of whether convictions obtained in violation of *Gideon v. Wainwright, supra,* could be used to impeach had not been decided, it had certainly been broached. *See Shorter v. United States,* 412 F.2d 428 (9th Cir. 1969), *cert. denied,* 396 U.S. 970, 90 S.Ct. 454, 24 L.Ed. 2d 436 (1969); *Subiloski v. Scafati,* 294 F.Supp. 18 (D. Mass.1968). Moreover, by the time of appellant's trial, the seeds of *Tucker* and *Loper* had been sown by the cases considering the use of invalid convictions to enhance punishment under state recidivist statutes. *See Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *Gilday v. Scafati,* 428 F.2d 1027 (1st Cir. 1970), *cert. denied,* 400 U.S. 926, 91 S.Ct. 188, 27 L.Ed.2d 186 (1970); *Oswald v. Crouse,* 420 F.2d 373 (10th Cir. 1969); *Losieau v. Sigler,* 406 F.2d 795 (8th Cir. 1969), *cert. denied,* 396 U.S. 988, 90 S.Ct. 475, 24 L.Ed.2d 452 (1969); *Williams v. Coiner,* 392 F.2d 210 (4th Cir. 1968).

The language of *Burgett* is particularly relevant. In that case, four prior uncounseled felony convictions were introduced to enhance Burgett's sentence pursuant to the Texas recidivist statute. The Supreme Court held that the introduction of such convictions violated the defendant's right to counsel: "To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense (see *Greer v. Beto,* 384 U.S. 269, 86 S.Ct. 1477, 16 L.Ed.2d 526) is to erode the principle of that case." 389 U.S. at 115, 88 S.Ct. at 262. Therefore, to say that appellant was incapable of knowing that the convictions could have been excluded is simply unrealistic.

It might also be contended that appellant's failure to raise the issue in the lower court was the product of ineffective assistance of counsel, and, therefore, no waiver occurred. *Commonwealth v. Wideman,* 453 Pa. 119, 306 A.2d 894 (1973). This, too, presents a troublesome issue, because the doctrine of ineffective assistance of counsel has been touted as a sufficient replacement for the now defunct doctrine of basic and fundamental error. *See Commonwealth v. Clair, supra.* However, the proposed replacement may not quite be up to the task. *See Commonwealth v. Krall,* 239 Pa.Super. 482, 360 A.2d 691 (1976). Nevertheless, a defendant is not constitutionally entitled to omniscient, faultless counsel. He is only entitled to effective counsel. What appears, through hindsight, to have been error will not necessarily have been ineffectiveness at the time. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). I do not believe that a claim of ineffective assistance of counsel can be predicated on an attorney's failure to check the validity of every conviction on a client's "rap sheet". Some of our more notorious citizens have "rap sheets" of astonishing length. An attorney would not be remiss, but would be eminently reasonable, in concluding that the finite amount of time that he has available for a case could be more productively devoted to other pursuits in his client's interest.

HOFFMAN, Judge, dissenting:

On May 11, 1970, appellant was found guilty of rape and related offenses. During that trial, the prosecutor impeached the appellant by introducing two prior convictions: a 1961 rape conviction and a 1965 assault and battery conviction. During the tortuous procedural history which followed the 1970 conviction, appellant's 1961 conviction was reversed on constitutional grounds in a Post Conviction Hearing Act proceeding in 1973, and was subsequently nolle prossed in 1974. In the instant case, appellant contends that use of the constitutionally invalid

1961 conviction for impeachment purposes in the 1970 trial was reversible error. I agree and would remand for a new trial.

On December 15, 1969, the Philadelphia Grand Jury indicted appellant on charges of aggravated robbery (No. 968), carrying a concealed deadly weapon (No. 969), and forcible rape (No. 970), which arose out of an incident that occurred on November 1, 1969. A jury was selected on May 7, 1970; on May 11, the jury found appellant guilty on all charges. The following is the account of the criminal episode as developed by the Commonwealth at trial.

At about 1:30 a. m., on November 1, 1969, the victim left work and was on her way to meet her fiance when she was accosted by the appellant at the corner of 51st and Locust Streets, in Philadelphia. The victim attempted to walk past appellant, but he caught up to her and placed a sharp object against her throat. The victim testified that appellant told her not to scream and that "[i]f I did he would cut my throat. So I asked him why did he want to, you know, do this to me; I had four children at home, you know; . . . he told me to shut up; he didn't want to hear that and we started walking. He put his arm around me and held onto my coat and put the razor, like, inside the collar of my coat."

Appellant led the victim to an abandoned house at 50th and Arch Streets where he had forcible intercourse with her. According to the victim's testimony, after appellant completed the act, he fell asleep on top of her. She then found the razor and threw it across the room. She also removed a pay stub from his pocket, later used by the police to locate the appellant.

After appellant awoke, he searched the victim's purse and removed some money. He then forced the victim to submit to a second act of intercourse. Upon completion of the act, appellant told his victim to remain in the building for five minutes longer before she left.

The victim went home immediately and, after changing clothes, went to the local police station with her fiance. The police found the victim's underclothes and the razor in the abandoned house.

The appellant took the stand and stated that he knew the victim, that she asked him if he knew where they could use some drugs and that they, therefore, went to the abandoned house. She then produced a drug that she called "monster" which appellant broke up with the razor that he was carrying. He claimed that after snorting the "monster" they agreed to have intercourse for $10; he could not recall whether he achieved penetration. Apparently, appellant passed out; when he woke up, he discovered that the victim had removed $10 in addition to the $10 originally agreed upon. He allegedly retrieved all the money from her, which precipitated an argument between them. After appellant finished his testimony, the Commonwealth introduced two prior criminal convictions, including the 1961 conviction for rape, in rebuttal.

Appellant was convicted and, on July 24, 1970, was sentenced to concurrent terms of imprisonment of 5 to 10 years on the rape and robbery bills (nos. 970, 968). Sentence on the weapon offense (no. 969) was suspended. On appeal, this Court affirmed per curiam. *Commonwealth v. Jones*, 219 Pa.Super. 723, 280 A.2d 446 (1971). Allocatur was denied on March 6, 1973. 219 Pa.Super. xxxviii. In the interim, on June 29, 1972, appellant petitioned the United States District Court for the Eastern District of Pennsylvania for a writ of habeas corpus. The petition was denied on August 29, 1972.

On July 30, 1973, appellant filed a Post Conviction Hearing Act [1] petition in which he challenged the validity of the 1961 conviction. Counsel was appointed to represent the appellant. Appellant contended that he had

---

1. Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180–1 et seq.

not knowingly and intelligently waived his right to appeal that conviction. On the authority of *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L. Ed.2d 811 (1963), and *Commonwealth v. Wilson,* 430 Pa. 1, 241 A.2d 760 (1968), the lower court granted appellant the right to file post-trial motions *nunc pro tunc.* Subsequently, when it was learned that there was no record of the trial testimony, the lower court ordered that appellant be granted a new trial. See *Commonwealth v. Goldsmith,* 452 Pa. 22, 304 A.2d 478 (1973); *Commonwealth v. Anderson,* 441 Pa. 483, 272 A.2d 877 (1971). The Commonwealth nolle prossed the charges on April 16, 1974.

While appellant was pursuing the litigation that overturned his 1961 conviction, he also filed a *pro se* PCHA petition challenging his 1970 conviction on the ground that he was prejudiced by introduction of prior convictions. He was denied relief on February 19, 1974, and did not appeal the court's order.

After his 1961 conviction was overturned, appellant filed another PCHA petition alleging that the use of the 1961 conviction for impeachment purposes required a new trial because it had subsequently been declared constitutionally invalid. On September 22, 1974, the lower court ordered another hearing on the matter for purposes of resentencing only. On December 13, 1974, appellant was resentenced to concurrent terms of four to eight years. This appeal followed.

Before we can reach the merits of appellant's claim, we must decide whether the issue was properly preserved for our review. The concurring opinion makes the following argument: Appellant did not raise the invalidity of his 1961 conviction prior to or at his 1970 trial.[2] Be-

2. Presumably, the appellant would have had to raise the issue pre-trial, rather than at trial. If he had not raised the problem until trial, the lower court would have known only that appellant had been denied his right to appeal. The proper remedy would

cause the United States Supreme Court had already decided *Griffin v. Illinois,* supra, and *Douglas v. California,* supra, appellant's challenge to his 1961 conviction would have been successful. Once that conviction had been successfully challenged, the concurring opinion suggests that appellant could have challenged its use for impeachment purposes even prior to *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), despite the fact that no court had so held. Therefore, the concurring opinion finds that appellant waived his right to challenge his 1970 conviction.

Initially, the concurring opinion assumes that appellant could have utilized a procedure to protect himself and cites *Commonwealth v. Sheehan,* 446 Pa. 35, 285 A. 2d 465 (1971). There is a serious problem with that approach. Appellant was no longer incarcerated by virtue of his earlier convictions at the time of the alleged 1969 rape. At the time of appellant's trial, *Commonwealth v. Sheehan* was not the law of Pennsylvania. See *Commonwealth v. Sheehan,* 216 Pa.Super. 26, 260 A.2d 496 (1969). Thus, under our holding in *Sheehan,* appellant's petition to overturn his 1961 conviction would have been dismissed.

Further, it is not clear that the 1961 conviction would have been inadmissible for impeachment purposes. Common sense may have dictated that result, but as the concurring opinion seems to recognize, that issue was still to be decided by the United States Supreme Court. That is precisely what the Court decided in *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), and *United States v. Tucker,* supra. See discussion, infra. I would not hold appellant responsible for failing to antici-

have been a right to appeal *nunc pro tunc.* It was only the fortuity of the absence of a record that led to the nolle prossing of the charges. Thus, at the time of trial, it would not have been error for the lower court to have allowed the use of the 1961 conviction to be used for impeachment purposes.

pate *Loper* and *Tucker*. See Post Conviction Hearing Act, *supra*, 19 P.S. § 1180–3(c)(12).[3]

Finally, although the above problem was not specifically discussed, our Supreme Court vacated judgment of sentence for resentencing in a situation similar to that raised in the instant case. *Commonwealth v. Calvert,* 463 Pa. 211, 344 A.2d 797 (1975). In *Calvert,* appellant was sentenced on March 30, 1968. The lower court considered for sentencing purposes numerous convictions rendered invalid by virtue of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), but never previously challenged by the appellant. The Court did not consider the waiver issue, and decided that appellant was entitled to be resentenced on a record that did not include the invalid convictions.

Thus, we must decide the merits of appellant's contention. The resolution of appellant's contention turns on our interpretation of two United States Supreme Court cases, *Loper v. Beto,* supra, and *United States v. Tucker,* supra.

In *Tucker,* the accused was convicted of armed bank robbery in 1953. He was identified by four bank employees. After taking the stand to present an alibi defense, Tucker was cross-examined and impeached by means of three prior felony convictions. After a jury convicted Tucker, "[i]n the ensuing sentencing proceeding the District Judge conducted an inquiry into the respondent's background, and, the record shows, gave explicit attention to the three previous felony convictions the respondent had acknowledged." 404 U.S. at 444, 92

3. See discussion McCormick, Evidence § 43 (Cleary 2d Ed.). "A conviction in a prosecution where accused was denied counsel has been held not usable for impeachment, *Gilday v. Scafati,* 428 F.2d 1027 (1st Cir. 1970) cert. denied 401 U.S. 222 [400 U.S. 926, 91 S.Ct. 188, 27 L.Ed.2d 186], but the decision must be read in light of the subsequent decision in *Harris v. New York,* 401 U.S. 222 [91 S.Ct. 643, 28 L.Ed.2d 1] (1971)." McCormick, *supra,* § 43 n. 68.

S.Ct. at 590. The court sentenced Tucker to the maximum permissible term.

Subsequent to Tucker's conviction, the United States Supreme Court decided *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which held that due process required appointment of counsel in state criminal proceedings. *Pickelsimer v. Wainwright*, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (per curiam remand) gave full retroactive application to *Gideon*.

Tucker successfully challenged two of the convictions used to impeach his credibility during his 1953 trial. *In re Tucker*, 64 Cal.2d 15, 48 Cal.Rptr. 697, 409 P.2d 921 (1966) ; *Tucker v. Craven*, 421 F.2d 139 (9th Cir. 1970). Thereafter, Tucker instituted the proceedings that reached the Supreme Court. The Ninth Circuit Court of Appeals held that "it had been 'firmly proved that the evidence of prior convictions did not contribute to the verdict obtained and that, with respect to the verdict of guilty, the error in receiving such evidence was therefore harmless beyond a reasonable doubt.' [but] . . . that there was 'a reasonable probability that the defective prior convictions may have led the trial court to impose a heavier prison sentence than it otherwise would have imposed.'" 404 U.S. at 446–47, 92 S.Ct. at 591. The Court of Appeals remanded the case for resentencing without consideration of the pre-*Gideon* uncounselled convictions. The Supreme Court affirmed.

In *Loper v. Beto, supra*, the Court addressed the problem found harmless in *Tucker*: whether the use of convictions invalid under *Gideon* to impeach requires reversal. Loper was tried in 1947 on a charge of statutory rape. The only witness for the state was the victim, Loper's 8-year-old stepdaughter. Similarly, Loper's defense consisted solely of his own testimony in which he denied the episode. As in *Tucker* and in the instant case, the prosecutor then introduced evidence of prior crimes to impeach his credibility. Loper was convicted

and sentenced to 50 years in prison. Subsequently, he challenged his conviction on the ground that he was impeached on the basis of constitutionally invalid convictions. The Supreme Court reversed Loper's convictions: " 'To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that . . . right.' [citing *Burgett v. Texas*, 389 U.S. 109, 115, 88 S.Ct. 258, 19 L. Ed.2d 319 (1968) ] . . .

"The *Tucker* case involved only that aspect of *Burgett* that prohibits the use of invalid prior convictions to 'enhance punishment.' The case now before us involves the use of such convictions 'to support guilt.' For the issue of innocence or guilt in this case turned entirely on whether the jury would believe the testimony of an 8-year-old girl or that of Loper. And the sole purpose for which the prior convictions were permitted to be used was to destroy the credibility of Loper's testimony in the eyes of the jury." 405 U.S. at 481–82, 92 S.Ct. at 1019. The Court vacated Loper's conviction and remanded for a new trial. Thus, *Loper* requires a reversal if "the use of prior, void convictions for impeachment purposes deprive a criminal defendant of due process of law where their use might well have influenced the outcome of the case." 405 U.S. at 480, 92 S.Ct. at 1018.

The instant case raises two problems. After the PCHA court discovered that the 1961 conviction was constitutionally invalid and that the charge had been nolle prossed, it remanded for resentencing. The 1961 conviction was held invalid because of a denial of appellate rights under *Griffin v. Illinois, supra,* and *Douglas v. California, supra,* not because of a denial of the right to trial counsel under *Gideon.* The Court in *Tucker* and

*Loper* emphasized that denial of counsel at trial rendered the factfinding process suspect. Therefore, it must be decided whether a denial of appellate rights similarly renders the factfinding suspect. Further, if such impeachment was improper, it must be decided whether the disposition of the instant case is controlled by *Loper* or *Tucker*.

Appellant's 1961 conviction was held to be invalid because he was denied his appellate rights. Obviously, a *Gideon* violation goes to the quality of the factfinding process of the trial. On the other hand, a denial of appellate rights may or may not be relevant to the integrity of the factfinding process. Thus, in the instant case, had the record of the 1961 conviction been available, he would have been able to exercise his right to appeal *nunc pro tunc*. In that appeal, it is conceivable that the alleged errors would have been without merit or would not have challenged the factfinding integrity of the trial. For example, had appellant alleged a technical violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), not challenging the reliability of the confession, we would have had no difficulty in affirming appellant's conviction. As the facts stand, however, we simply have no way of knowing what issues appellant would have raised in that appeal, and, therefore, do not know whether there were trial errors rendering the factfinding process suspect.

This problem was addressed in *Griffin* and resolved in favor of the criminal accused: "We must . . . assume for purposes of this decision that errors were committed in the trial which would merit reversal, but that the petitioners could not get appellate review of those errors solely because they were too poor to buy a stenographic transcript." 351 U.S. at 16, 76 S.Ct. at 589. The Court noted further that "[a]ll of the States now provide some method of appeal from criminal convictions, recognizing the importance of appellate review to

correct adjudication of guilt or innocence. Statistics show that a substantial proportion of criminal convictions are reversed by state appellate courts. Thus to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside." Id. at 18–19, 76 S.Ct. at 590. Further, the Supreme Court has held both *Douglas v. California, supra,* and *Griffin v. Illinois, supra,* retroactive; see, *Smith v. Crouse,* 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (1964), and *Eskridge v. Washington Prison Board,* 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958)—a result indicating the Court's view that the denial of the right to appeal creates the possibility of an unreliable verdict. Cf. *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).

The only remaining question is what remedy is proper. The Court affirmed Tucker's conviction because the use of the invalid prior conviction amounted to harmless error in light of the strength of the evidence at trial. In *Loper,* the sole issue was one of credibility. There were only two witnesses—Loper and his stepdaughter. The introduction of Loper's prior constitutionally invalid convictions may have convinced the jury that Loper was not worthy of belief. To allow the conviction to stand would compound the original violation of Loper's right to counsel; therefore, the Court remanded the case for a new trial. Similarly, in the instant case, only appellant and the victim testified on the issue of whether intercourse was consensual. The police officer's testimony that he found a razor and the victim's undergarments in the abandoned house was consistent with testimony of both the victim and the appellant. Appellant admitted that he had engaged in intercourse. Further, there was no evidence of bruises, lacerations, or other physical harm that would inherently refute appellant's claim of consent. Thus, the case ultimately turned on the credibility of the appellant and the victim. Under such circumstances, in-

368

troduction of the constitutionally invalid 1961 conviction was not harmless error.

Therefore, I would reverse appellant's conviction and remand the case for a new trial.

SPAETH, J., joins in this dissenting opinion.